**[J-91-2015]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 708 CAP |
| | : | |
| Appellee | : | Appeal from the Order entered on June |
| | : | 22, 2015 in the Court of Common Pleas, |
| | : | Bucks County, Criminal Division at No. |
| v. | : | CP-09-CR-0006917-2005 |
| | : | |
| | : | SUBMITTED: January 20, 2016 |
| ROBERT ANTHONY FLOR, | : | |
| | : | |
| Appellant | : | |

**OPINION**

**JUSTICE WECHT**                                            **DECIDED:  April 25, 2016**

In a petition filed pursuant to the Post Conviction Relief Act,[1] Robert Anthony Flor

alleged ineffective assistance of counsel at his homicide trial.  After two years of

proceedings in the PCRA court, the Commonwealth moved for the production of

documents, requesting "access to the complete records" of trial counsel.[2]  This file

included some 30,000 pages of documents pertaining to Flor's conviction, sentence,

and direct appeal, and filled twelve banker's boxes.  At a hearing on the

Commonwealth's motion, Flor's PCRA counsel requested several weeks to review the

file to allow removal of material protected by attorney-client privilege or constituting

_____

[1]     42 Pa.C.S. §§ 9541-46 ("PCRA").

[2]     Commonwealth's Motion for Production of Documents (hereinafter,
"Commonwealth's Motion") at ¶ 13.

attorney work product. The PCRA court granted the Commonwealth's motion and denied PCRA counsel's request for time to conduct a privilege review. Flor has filed an appeal from this discovery order. See Pa.R.A.P. 313.

We conclude that the PCRA court's discovery order is immediately appealable pursuant to Rule 313. We further conclude that the PCRA court abused its discretion in affording wholesale discovery without conducting an issue-specific waiver analysis, as required by this Court in Commonwealth v. Harris, 32 A.3d 243 (Pa. 2011). Accordingly, we vacate the discovery order, and we remand for immediate inspection of the file consistent with this Opinion.

## I. Background

On October 23, 2006, Flor pleaded guilty to first-degree murder for the shooting death of Newtown Borough Police Officer Brian Steven Gregg, and pleaded *nolo contendere* to a series of related charges.[3] Because the Commonwealth sought a death sentence, a jury was impaneled for the penalty phase of the case. On November 17, 2006, the jury returned a sentence of death. At trial and sentencing, Flor was represented by two members of the Bucks County Public Defender's Office (hereinafter, "trial counsel"). Separate appellate counsel from the Public Defender's office represented Flor on direct appeal. On July 22, 2010, we affirmed the judgment of

---

[3]     See Commonwealth v. Flor, 998 A.2d 606 (Pa. 2010) (providing the factual background of Flor's crimes and resolving Flor's direct appeal). The essential events were as follows: As Officer Gregg and Newtown Borough Police Officer James Warunek escorted Flor into the lavatory at St. Mary Medical Center to provide blood and urine samples, Flor disarmed Officer Warunek and used his weapon to shoot Officer Warunek, Officer Gregg, and Joseph Epp, an emergency medical technician on duty in the emergency room. Officer Gregg died as a result.

sentence. Commonwealth v. Flor, 998 A.2d 606 (Pa. 2010), *cert. denied*, 563 U.S. 941 (2011).

On May 26, 2011, Flor filed a *pro se* motion for post-conviction relief. On February 25, 2013, the Federal Defender's Office (hereinafter, "PCRA counsel") filed a PCRA petition on Flor's behalf. The petition alleged, *inter alia*, that trial counsel was ineffective for failing adequately to investigate Flor's background, social history, medical history, adaptive deficits, and intellectual disabilities, including whether Flor suffered from fetal alcohol syndrome; failing to consult with appropriate experts; failing to raise particular defenses; failing to object to various acts of misconduct by the prosecutor; failing to object to certain jury instructions; failing to present adequate evidence in mitigation; and providing deficient advice and representation. The PCRA petition further alleged that Flor was intellectually disabled, rendering him ineligible for the death penalty pursuant to Atkins v. Virginia, 536 U.S. 304 (2002), and that trial counsel was ineffective for failing to introduce evidence of Flor's intellectual disability during the penalty phase.[4]

On June 1, 2013, the PCRA court granted Flor an evidentiary hearing. Over the next two years, the PCRA court held seven hearings pertaining solely to Flor's Atkins claim. On June 2, 2015, the Commonwealth moved for the production of documents, seeking access to "the complete records of [trial counsel] in order to review what trial counsel did and did not do in preparation for this case, to prepare cross-examination of [trial counsel], and to adequately prepare argument regarding [Flor's] ineffective

---

[4] On July 1, 2013, Flor filed an appendix in support of his amended PCRA petition, adding affidavits from trial counsel regarding their representation of him during the plea and penalty phases, and concerning their investigation and preparation for trial.

assistance of counsel claims." Commonwealth's Motion at ¶ 13. According to the Commonwealth, trial counsel indicated that they had no independent recollection of the investigation that they conducted to prepare for the penalty phase of Flor's trial, nor had they retained any copies of documents related to their representation. Recognizing that its discovery request implicated privileged documents, the Commonwealth argued that Flor had waived the protections of the attorney-client privilege[5] and work product doctrine[6] by asserting post-conviction claims of ineffectiveness. However, the Commonwealth also recognized the possibility that trial counsel's files contained documents that remained privileged, and specifically disclaimed any entitlement to documents related to Flor's direct appeal. Id. at ¶ 8.

PCRA counsel opposed the Commonwealth's motion, arguing that the contents of trial counsel's file are subject to the attorney-client privilege and work product doctrine, and, therefore, are not subject to discovery by the Commonwealth. To prevent the disclosure of privileged information, PCRA counsel requested the opportunity to

---

[5]  See Commonwealth v. Chmiel, 738 A.2d 406, 423 (Pa. 1999) (explaining that, with respect to attorney-client privilege, "all confidential communications and disclosures, made by a client to his legal adviser for the purpose of obtaining his professional aid or advice, shall be strictly privileged;—that the attorney shall not be . . . compelled—to reveal or disclose communications made to him under such circumstances.") (citation omitted).

[6]  The work product doctrine, which the U.S. Supreme Court has described as a "qualified privilege for certain materials prepared by an attorney 'acting for his client in anticipation of litigation,'" see Commonwealth v. Williams, 86 A.3d 771, 782 n.6 (Pa. 2014) (quoting United States v. Nobles, 422 U.S. 225, 237-38 (1975)), exempts from discovery certain types of documents. See Pa.R.Crim.P. 573(G) (defining the work product doctrine as barring disclosure "of legal research or of records, correspondence, reports, or memoranda to the extent that they contain the opinions, theories, or conclusions of the attorney . . . or members of their legal staffs").

conduct a review of trial counsel's file to identify and remove any privileged materials, including documents related to Flor's direct appeal.

On June 22, 2015, the PCRA court held oral argument upon the Commonwealth's motion. The court asked PCRA counsel to provide specific examples of material in trial counsel's file that was or could be privileged. PCRA counsel indicated that, at a minimum, privileged materials would include any memoranda or documents that did not relate to Flor's ineffectiveness claims, and further explained that the direct appeal material, which the Commonwealth did not request, was contained within trial counsel's file and distributed throughout.[7]

Following the hearing, the PCRA court granted the Commonwealth's discovery motion, denied Flor's request for more time to conduct a privilege review, and directed PCRA counsel to provide the Commonwealth with the entirety of trial counsel's file within ten days. Although the Court recognized that, "at first blush," there might be privileged statements contained within trial counsel's file, it offered two reasons for its broad discovery order. First, the PCRA court relied upon Flor's guilty plea, which waived all claims against self-incrimination as to the crimes at issue. See Commonwealth v. Strickler, 393 A.2d 313, 316 (Pa. 1978) ("[A] plea of guilty to a criminal charge is regarded as a waiver of the privilege against self-incrimination with respect to that charge.") (citation omitted). Given this plea, the PCRA court was unable

---

[7] Additionally, each party accused the other of causing undue delay. The Commonwealth opposed PCRA counsel's request for time to conduct a privilege review by arguing that counsel already had been in possession of trial counsel's file for two years, suggesting a lack of diligence. PCRA counsel, on the other hand, suggested that it was the Commonwealth that had not been diligent because it waited two years from receiving notice of Flor's intent to call trial counsel as witnesses to seek this discovery.

to imagine that there was anything in trial counsel's file that could be privileged. See N.T., 6/22/2015, at 22-23; PCRA Ct. Op. at 8 ("He plead[ed] guilty. He hasn't said anything confidentially to his trial counsel. . . . I just can't fathom, given the posture of this case and the guilty plea, what could possibly be privileged.").

Second, the PCRA court believed that, by filing his petition and raising claims of ineffectiveness, Flor had placed at issue all of trial counsel's impressions and investigative efforts, and, therefore, waived any entitlement to rely upon attorney-client privilege or work product protection. Although the PCRA court recognized that "trial counsel's documents should not typically be subjected to wholesale examination by the Commonwealth," PCRA Ct. Op. at 10, it determined that this case uniquely warranted such an extraordinary remedy so that the Commonwealth could respond to Flor's claims, particularly inasmuch as trial counsel could not recall the scope of their investigation. Although the PCRA court stated that documents relating to Flor's direct appeal remained privileged and were not subject to discovery, the court did not confront PCRA counsel's assertion that trial counsel's file contained both trial and appellate materials distributed throughout the twelve banker's boxes.

## II. Issues and Jurisdiction

Flor presents three issues for our review: whether the PCRA court's discovery order violated his protections under the attorney-client privilege and work product doctrine, as well as his right to counsel; whether the PCRA court's order otherwise violated Rule 902(E)(2) of the Rules of Criminal Procedure, Pa.R.Crim.P. 902(E)(2); and whether the PCRA court erred by compelling discovery of trial counsel's original file. Brief of Appellant at 5-6.

Discovery in post-conviction proceedings is governed by Rule 902(E)(2). The Rule provides that, upon a first counseled petition in a death penalty case, no discovery is permitted "except upon leave of court after a showing of good cause." Pa.R.Crim.P. 902(E)(2). We review a discovery order entered pursuant to this rule under an abuse of discretion standard. Commonwealth v. Williams, 86 A.3d 771, 787 (Pa. 2014); Commonwealth v. Miller, 987 A.2d 638, 671 (Pa. 2009); Commonwealth v. Sattazahn, 952 A.2d 640, 662 (Pa. 2008). We have explained that "[d]iscretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." Commonwealth v. Baumhammers, 960 A.2d 59, 86 (Pa. 2008) (citation omitted). Our determination of whether the PCRA court had "good cause" to issue its discovery order under Rule 902(E)(2) inevitably requires an analysis of the attorney-client privilege and the work product doctrine. These are legal questions as to which our scope of review is plenary and our standard of review is *de novo*. See Commonwealth v. Kennedy, 876 A.2d 939, 943 n.3 (Pa. 2005).

Generally, subject to limited exceptions, litigants may appeal only final orders. Williams, 86 A.3d at 780. One of the exceptions is the collateral order, which is addressed in Rule 313 of the Pennsylvania Rules of Appellate Procedure. Pa.R.A.P. 313. Rule 313 permits the immediate appeal as of right from an otherwise unappealable, interlocutory order provided that three requirements are met: "(1) the order must be separable from, and collateral to, the main cause of action; (2) the right involved must be too important to be denied review; and (3) the question presented

must be such that if review is postponed until after final judgment, the claim will be irreparably lost." Harris, 32 A.3d at 248; Pa.R.A.P. 313(b). As we established in Harris, discovery orders rejecting claims of privilege and requiring disclosure constitute collateral orders that are immediately appealable under Rule 313. 32 A.3d at 251 ("[W]e reaffirm our holding in Ben [v. Schwartz, 729 A.2d 547 (Pa. 1999)], that orders overruling claims of privilege and requiring disclosure are immediately appealable under Pa.R.A.P. 313."); see also Williams, 86 A.3d at 780 ("This Court has moved towards a category-wide exception to discovery orders that are alleged to violate a protected privilege, such as the attorney-client privilege or the work product doctrine."). Flor argues that the PCRA court's discovery order is appealable now because it violates the attorney-client privilege and the work product doctrine. The Commonwealth does not contest this Court's jurisdiction in this appeal pursuant to Rule 313. Accordingly, our precedents establish that we have jurisdiction over the PCRA court's discovery order to the extent that it rejected Flor's claim of privilege and compelled disclosure of trial counsel's file.

We pause to observe that Flor has raised two additional challenges to the PCRA court's order which do not depend upon a resolution of whether trial counsel's file contains material covered by the attorney-client privilege or work product doctrine. Specifically, relying upon the rule governing discovery in post-conviction proceedings, Flor argues that the PCRA court's discovery order did not meet the "good cause" threshold of Rule 902(E)(2), because the Commonwealth failed to request specific documents and, instead, sought disclosure of the entire file. See Williams, 86 A.3d at 789 (providing that general discovery requests are insufficient, and requiring the

requester to identify specific documents or items). To the extent that the Commonwealth relied upon trial counsel's inability to recall the scope of their investigation, Flor asserts that the Commonwealth failed to make a factual proffer to identify the claims in question, the questions posed to trial counsel, or the events trial counsel could not recall. By virtue of the affidavits from trial counsel, Flor disputes the Commonwealth's factual assertions and submits that trial counsel could recall a great deal about their representation of Flor. Flor argues that the Commonwealth's discovery motion was insufficient to justify any discovery, much less the broad discovery authorized by the PCRA court.

Second, Flor argues that the PCRA court erred in compelling disclosure of trial counsel's original file because that file belongs exclusively to the client, and counsel has a legal and professional obligation to safeguard it. See Maleski v. Corporate Life Ins. Co., 641 A.2d 1, 6 (Pa. Cmwlth. 1994) (providing that documents in the client's file belong to the client); Pa.R.P.C. 1.15(b) (requiring counsel to safeguard the client's property). Flor has not advanced a Rule 313 analysis with regard to either of these two issues.

As we explained in Williams, the collateral order doctrine must be construed narrowly, in deference to the final order doctrine, and in recognition of the fact that a party may seek interlocutory appeal by permission pursuant to Pa.R.A.P. 312. Williams, 86 A.3d at 780; see also In re Estate of Stricker, 977 A.2d 1115, 1119 (Pa. 2009) ("The [collateral order] doctrine is to be construed narrowly to preserve the integrity of the general rule that only final orders may be appealed; thus, the requirements for a collateral order are applied relatively stringently."); Rae v. Pennsylvania Funeral

Directors Ass'n, 977 A.2d 1121, 1126 (Pa. 2009) ("To buttress the final order rule, we, too, have concluded the collateral order doctrine is to be construed narrowly, and we require every one of its three prongs be clearly present before collateral appellate review is allowed."). To limit the scope of collateral review, mindful that our precedent cautions against permitting the collateral order doctrine to become an exception that swallows the rule, we require the three-prong collateral order test to be met for each individual issue that an appellate court reviews upon collateral appeal. Rae, 977 A.2d at 1130 (holding that "the collateral order rule's three-pronged test must be applied independently to each distinct legal issue over which an appellate court is asked to assert jurisdiction pursuant to Rule 313").

In accord with Rae, we will not address whether the PCRA court's order was supported by good cause, or whether that court abused its discretion in compelling disclosure of trial counsel's original file. Although he is the appealing party, Flor has advanced no argument that the collateral order rule's three-pronged test is satisfied with regard to these latter claims. Our jurisdiction pursuant to Rule 313 extends on this appeal solely to the question of whether the PCRA court's discovery order was supported by good cause sufficient to overcome the relevant attorney-client privilege and the work product doctrine.[8]

---

[8]    Because discovery orders in PCRA proceedings must be supported by good cause, our analysis of the privilege and the doctrine necessarily entails a review of whether the Commonwealth established good cause for the discovery. In Williams, which also involved an appeal pursuant to Rule 313, we resolved a two-pronged attack on a PCRA court's discovery order that granted the post-conviction petitioner access to the prosecutor's trial notes regarding witness interviews, premised upon the petitioner's argument that the prosecutor's duty to disclose exculpatory material pursuant to Brady v. Maryland, 373 U.S. 83 (1963), defeated the relevant work product protection. 86 (continued…)

### III. Merits

Flor argues that the PCRA court's discovery order violated the attorney-client privilege and work product doctrine, as well as his Sixth Amendment right to counsel. Flor emphasizes the importance of the two protections to the functioning of our criminal justice system and to a criminal defendant's vindication of his right to counsel. See United States v. Levy, 577 F.2d 200, 209 (3d Cir. 1978) ("Free two-way communication between client and attorney is essential if the professional assistance guaranteed by the sixth amendment is to be meaningful.").

Flor acknowledges that, when a PCRA petitioner challenges prior counsel's effectiveness, the privilege is waived as to materials placed "in issue" by the particular claims. See Harris, 32 A.3d at 253 ("In-issue waiver occurs when the privilege-holder asserts a claim or defense, and attempts to prove that claim or defense by reference to

---

(…continued)

A.3d at 775-76. The Commonwealth argued on appeal, first, that the discovery order compelled the disclosure of privileged communications, and, second, that it, therefore, ran afoul of the good cause standard imposed by Rule 902(E)(2). Id. at 778. Discussing our jurisdiction pursuant to Rule 313, and examining whether the discovery order was separable from the petitioner's underlying Brady claim, we observed that the good cause standard required the requesting party to defeat the relevant privileges irrespective of the basis of the underlying claim. Id. at 781. On the merits, we agreed with the Commonwealth that the petitioner did not establish good cause, because the existence of the requested documents was speculative and, if the documents in fact existed, they were protected by the work product doctrine. Id. at 790. By compelling disclosure, the PCRA court had invaded the Commonwealth's work product based purely upon speculation, and, therefore, failed to meet the good cause threshold of Rule 902(E)(2). Id. at 790-91.

As Williams instructs, determining the merits of whether a PCRA discovery order impermissibly invaded a protected area will require some analysis of whether the order was supported by good cause. Litigants may not, however, rely upon Rule 313 to challenge discovery orders for reasons unrelated to privilege claims, without satisfying the requirements of Rule 313 as to each issue. Rae, *supra*.

the otherwise privileged material."). According to Flor, the PCRA court's order granting wholesale discovery of trial counsel's file to the Commonwealth swept important protections aside and failed to conduct the issue-specific waiver analysis required under Harris. The consequence, according to Flor, was to compel disclosure of all materials contained within the files, including direct appeal material that the Commonwealth and the PCRA court agreed remained protected by privilege. Cf. Commonwealth v. Chmiel, 738 A.2d 406, 424 (Pa. 1999) (holding that "an attorney may not respond to allegations of ineffectiveness by disclosing client confidences unrelated to such allegations").

Flor argues that the breadth of the PCRA court's order in this case works a chilling effect upon the Sixth Amendment right to counsel. Flor analogizes this case to Chmiel, in which a PCRA petitioner challenged trial counsel's effectiveness in post-conviction proceedings. 738 A.2d 406. When trial counsel testified in response, he revealed communications from the petitioner that were otherwise privileged. Following post-conviction proceedings, the petitioner was awarded a new trial, at which the Commonwealth introduced trial counsel's post-conviction testimony. The petitioner appealed to this Court. Upon review, we held that the Commonwealth could not use the post-conviction testimony of trial counsel against the petitioner at petitioner's retrial. We explained that permitting the use of such testimony would place criminal defendants in the untenable position of choosing either to withhold information from their attorneys or declining to challenge counsel's effectiveness out of fear that prior communications would become admissible, thereby imposing "a chilling effect on defendants' exercise of their right to the effective assistance of counsel." Chmiel, 738 A.2d at 423. According to Flor, compelled disclosure of the entirety of trial counsel's file in this case would have

a similar chilling effect upon defendants' exercise of their right to effective assistance of counsel, because would-be PCRA petitioners would be forced to choose between accepting disclosure of privileged material or abandoning potentially meritorious claims of ineffectiveness. To remedy this legal error, Flor requests that we vacate the discovery order and direct the PCRA court to provide counsel the opportunity to conduct an issue-specific privilege assessment.

Relying upon the PCRA court's second rationale for its discovery order, the Commonwealth argues that Flor has waived the protections of the attorney-client privilege and work product doctrine by challenging trial counsel's ineffectiveness. Focusing upon the breadth of Flor's ineffectiveness claims, the Commonwealth argues that Flor has faulted every aspect of trial counsel's representation, from pre-trial motions through the penalty phase. Although the Commonwealth agrees with Flor that <u>Harris</u> compels a finding of waiver only as to matters that a post-conviction petitioner has placed "in issue," the Commonwealth believes that Flor's extensive allegations of trial counsel ineffectiveness put "in issue" every aspect of counsel's representation, thereby waiving *in toto* the attorney-client privilege and work product protection and necessitating disclosure of the entirety of trial counsel's file.

The Commonwealth also maintains that PCRA counsel cannot be the gate-keeper that determines which documents are privileged, and further suggests that requiring the PCRA court to conduct an *in camera* review would add unnecessary delay to these lengthy proceedings. The Commonwealth believes that compelled disclosure of the entire file would be far more expedient, and warranted under the circumstances. Further, to prevent the inclusion of direct appeal material within trial counsel's file, which

the Commonwealth agrees is not discoverable, the Commonwealth asserts that PCRA counsel should have utilized the ten days' production time afforded it by the PCRA court to redact and remove any such material.

The Commonwealth distinguishes <u>Chmiel</u> by arguing that, unlike the prosecution in that case, it is not seeking to use privileged material to prosecute Flor. Rather, the Commonwealth is seeking the opportunity to defend Flor's existing conviction against collateral attack. Additionally, the Commonwealth believes that it is unrealistic to suppose, as Flor suggests, that a criminal defendant will withhold information from trial counsel out of fear that the information will be revealed when he later wishes to challenge that attorney's effectiveness.

It is beyond peradventure that Pennsylvania law protects the attorney-client privilege and recognizes it as "the most revered of the common law privileges." <u>Chmiel</u>, 738 A.2d at 414.[9] Because the privilege seeks to foster confidence between attorney and client in order to promote a trusting and open dialogue, permitting an attorney to reveal to others what the client has disclosed would destroy and prevent the benefits of

---

[9] The attorney-client privilege, as it pertains to criminal matters, is codified at Section 5916 of the Judicial Code, 42 Pa.C.S. § 5916, as follows:

> In a criminal proceeding counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

42 Pa.C.S. § 5916. The statutory codification of the attorney-client privilege suggests the General Assembly's acknowledgment of the significance of this protected interest. <u>See</u> <u>Chmiel</u>, 738 A.2d at 423; <u>see</u> <u>also</u> <u>Gillard v. AIG Ins. Co.</u>, 15 A.3d 44, 59 (Pa. 2011) (holding that "the attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice").

representation. Id. at 423.  In the criminal arena in particular, "the difficulty of obtaining full disclosure from the accused is well known, and would become an absolute impossibility if the defendant knew the lawyer could be compelled to report what he had been told." Id. (quoting 1 McCormick on Evidence § 87 (4th ed.1992)).

Pennsylvania law also protects an attorney's work product from compelled disclosure.  This protection promotes our adversarial system "by enabling attorneys to prepare cases without fear that their work product will be used against their clients." Kennedy, 876 A.2d at 948.  Indeed, we have characterized the work product doctrine as "one of the most fundamental tenets of our system of jurisprudence." Commonwealth v. Dennis, 859 A.2d 1270, 1278 (Pa. 2004).

Nevertheless, a party who challenges the effectiveness of trial counsel cannot invoke privilege to prevent counsel from responding to the allegations.  Chmiel, 738 A.2d at 414.  "In effect, the client's attack on the competence of counsel serves as a waiver of the privilege as to the matter at issue." Id.   Because ineffectiveness challenges do not waive the attorney-client privilege or work product doctrine as to all material counsel may possess, our precedent requires an issue-specific analysis of waiver.  Harris, 32 A.3d at 252 (holding that when a petitioner challenges counsel's effectiveness in a post-conviction petition, he only has waived his privileges to the extent that he "puts the privileged materials in issue. . ."); Chmiel, 738 A.2d at 424 (holding that "an attorney may not respond to allegations of ineffectiveness by disclosing client confidences unrelated to such allegations"); see also 42 Pa.C.S. § 9545(d)(3) ("When a claim for relief is based on an allegation of ineffective assistance of

counsel as a ground for relief, any privilege concerning counsel's representation *as to that issue* shall be automatically terminated.") (emphasis added).

In Harris, the post-conviction petitioner challenged trial counsel's effectiveness with regard to the presentation of an expert witness psychologist during the mitigation phase of his trial. Harris, 32 A.3d at 244. To defend against these allegations, the Commonwealth sought from the PCRA court a declaration that Harris had waived his psychologist-patient privilege with respect to the expert witness, and further sought permission to hire the psychologist as its own expert for the PCRA proceedings. After the PCRA court granted the Commonwealth's motion and Harris appealed pursuant to Rule 313, we reversed the lower court's order permitting the Commonwealth to hire Harris' prior expert as its own.[10] Although we agreed with the Commonwealth and the PCRA court that, by challenging the performance of the expert and of trial counsel, Harris had waived the privilege as to material necessary for the Commonwealth to respond to those challenges, we held that the Commonwealth could not retain Harris' former expert. We reasoned that permitting the Commonwealth to retain the expert "would not only risk disclosure of material to which [Harris] has not waived privilege, but also would erode public confidence in the integrity of criminal proceedings." Id. at 252. We explained that "[i]n-issue waiver occurs when the privilege-holder asserts a claim or defense, and attempts to prove that claim or defense by reference to the otherwise privileged material." Id. at 253 (citing Rhone–Poulenc Rorer Inc. v. Home Indem. Co.,

---

[10]     We also held that the Commonwealth could subpoena the expert as a fact witness, and we tasked the PCRA court with determining on remand precisely which portions of the expert's testimony remained privileged in light of Harris' claims. Harris, 32 A.3d at 253-54.

32 F.3d 851, 863 (3d Cir. 1994)). Additionally, because the expert in Harris also was privy to confidential communications between Harris and trial counsel, some of which may have had no bearing upon Harris' PCRA claims, we observed that the mere potential for still-privileged material to be revealed was sufficient to bar the prosecution from retaining and consulting with the expert. Id. at 253. Accordingly, we held that the PCRA court erred by allowing the Commonwealth to retain the expert witness. Id. at 254.

It is undisputed that Flor's conversations with trial counsel were protected by the attorney-client privilege, and that trial counsel's research, correspondence, reports, or opinions were protected by the work product doctrine. Absent waiver, this material would remain protected against compelled disclosure. It is further undisputed that the PCRA court in this case compelled disclosure of trial counsel's file without conducting an "in-issue" waiver analysis to determine the extent to which Flor's claims depended upon otherwise privileged material, as required by Harris and Section 9545(d)(3). PCRA counsel alleged that this voluminous file contained privileged documents because it included direct appeal material and material unrelated to the issues raised in the PCRA petition, including memoranda and legal research containing trial counsel's opinions and material relating to investigative matters. N.T., 6/22/2015, at 15, 19-20. Because trial counsel was privy to confidential attorney-client communications, some of which may have no bearing upon Flor's present PCRA claims of ineffectiveness, it is distinctly possible that trial counsel's file contains privileged material that Flor has not placed "in issue." This possibility requires strict adherence to our precedent protecting privileged communications. See Harris, *supra*; Chmiel, *supra*.

The Commonwealth maintained that it did not seek materials related to direct appeal. Commonwealth's Motion at ¶ 8; N.T., 6/22/2015, at 6; id. at 26 ("While [PCRA counsel] says there's a couple of matters, one is that he believes that it may still be privileged. One is a direct appeal. We are not interested in that."). And the PCRA court indicated in its opinion that it had not directed trial counsel to turn over documents related to Flor's direct appeal. PCRA Ct. Op. at 10. Yet, the PCRA court's broad order compelled disclosure of the entire file, which included the direct appeal materials that all parties acknowledge are privileged.[11]

The PCRA court neither conducted an *in camera* review nor provided counsel with the opportunity to separate the material that remained privileged from that which was put in issue by Flor's claims. Although it may well be that the bulk of trial counsel's file no longer is privileged because of the scope of Flor's claims, it also is possible that some material remains privileged because it was not put in issue. As in Harris, the mere potential that the PCRA court's order will force the disclosure of privileged materials requires reversal of the PCRA court's discovery order. See Harris, 32 A.3d at 253 (recognizing that the PCRA court's order "create[d] the potential that still-privileged material will be revealed").

The same concerns that mandate recognition of the attorney-client privilege compel recognition that disclosure of the entirety of trial counsel's file without an issue-specific waiver analysis also would have a chilling effect upon defendants exercising

---

[11]   The Commonwealth suggests that PCRA counsel could have used the ten days' production time afforded to remove any material related to the direct appeal. However, the PCRA court's order left no room for winnowing. See N.T., 6/22/2015, at 34 (directing PCRA counsel to turn over "all of these twelve banker boxes").

their right to effective representation. See Chmiel, 738 A.2d at 423. Knowing that anything disclosed to counsel may be memorialized and retained within counsel's file and then turned over to the Commonwealth if the defendant later challenges counsel's representation, a reasonable defendant may withhold information about his case from counsel. Or he may forego a meritorious challenge to counsel's ineffectiveness in order to avoid disclosure to the Commonwealth. In effect, if Flor was represented by ineffective trial counsel, he faced a constitutionally impermissible choice: either challenge the effectiveness of prior counsel, at the risk that all of his confidences shared would be disclosed to the Commonwealth, or forego his ineffectiveness challenges so as to protect the confidentiality of his prior conversations. We agree with Flor that, if allowed to stand, the PCRA court's overbroad discovery order would have a chilling effect upon a PCRA petitioner's ability to vindicate his constitutional right to effective representation.

Moreover, to the extent that the PCRA court's order was premised upon Flor's guilty plea and concomitant waiver of the privilege against self-incrimination, it was error. Although a guilty plea to a criminal charge waives one's right against self-incrimination with respect to that charge, see Strickler, 393 A.2d at 316, a guilty plea does not waive the attorney-client or work product protections. Rather, the attorney-client privilege and work product doctrine respectively encompass all confidential communications between attorney and client made for the purpose of obtaining professional advice, see Chmiel, 738 A.2d at 423, and any documents containing the attorney's opinions, conclusions, or theories, see Williams, 86 A.3d at 782 n.6.

Accordingly, we conclude that the PCRA court abused its discretion by compelling PCRA counsel to deliver to the Commonwealth the entirety of trial counsel's file without first discerning whether and to what extent the file contained privileged material and removing such material from the file. We direct the PCRA court on remand to permit PCRA counsel the opportunity to determine precisely what portions of trial counsel's file remain privileged in light of Flor's claims. We urge the PCRA court to ensure that this review is completed expeditiously to permit the proceedings to move forward.

The PCRA court's discovery order is vacated, and the case is remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

Chief Justice Saylor and Justices Todd and Donohue join the opinion.

Chief Justice Saylor files a concurring opinion in which Justice Donohue joins.

Justice Dougherty files a concurring opinion in which Justice Baer joins.