J-S22008-25

2025 PA Super 267

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DIANNA ZOUNGRANA | : | |
| | : | |
| | : | No. 1430 MDA 2024 |
| APPEAL OF: ANDREW QUIETMEYER, | : | |
| ESQ. | : | |

Appeal from the Order Entered September 20, 2024
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-CR-0001154-2023

BEFORE: LAZARUS, P.J., BOWES, J., and STEVENS, P.J.E.[*]

OPINION BY LAZARUS, P.J.:                    **FILED: NOVEMBER 26, 2025**

R. Andrew Quietmeyer, Esquire ("Attorney Quietmeyer"),[1] a third party

to the above-captioned case, appeals from the order, entered in the Court of

Common Pleas of Cumberland County, denying in part his motion to quash a

subpoena. After careful review, we affirm.

The trial court set forth the following summary of relevant facts:

As the result of an incident that allegedly took place on Tuesday,
May 9, 2023, Defendant Dianna Zoungrana [("Zoungrana")] was
charged with aggravated assault, strangulation, and simple
assault. The basis for the criminal complaint was described in the
affidavit of probable cause [] as follows:

On 5/9/2023, Hampden Township Police were dispatched to
6503 Salem Park Cir[cle, Mechanicsburg,] for a 911 hang[-

---

[*] Former Justice specially assigned to the Superior Court.

[1] Attorney Quietmeyer represents Hermann Zoungrana ("Mr. Zoungrana"), the
alleged victim in the underlying matter, **Commonwealth v. Zoungrana**, CP-
21-CR-0001154-2023.

]up and male that ha[d] been stabbed. The caller was [] Zoungrana.

Upon [Officer] Justin Wright['s arrival, he] observed a male walking up to [him] from a black Chevy Silverado. He had heavy bleeding coming from his right elbow area. He gave his name as Herman Zoungrana []. He was the husband of the caller, [Zoungrana]. [Mr. Zoungrana] advised that his wife, [Zoungrana], had gotten upset with him[,] thinking he had her passport. While they screamed at each[]other [], she grabbed him by the throat in the kitchen of their home. [Zoungrana,] with her back to the counter, reached around with her right hand and grabbed a steak knife from the butcher block. With her left hand still on [Mr. Zoungrana]'s neck, [Zoungrana] attempted to stab [Mr. Zoungrana] numerous times, eventually stabbing him in the right arm near his elbow. [Mr. Zoungrana] was able to escape the residence.

When asked, [Mr. Zoungrana] stated that he was afraid for his life during the course of this incident.

[Zoungrana] was taken into custody at [4:03 p.m.]

By way of background, it appears that [Zoungrana] is a United States citizen, that [Mr. Zoungrana] is a citizen of Nigeria residing in this country, and that [Zoungrana] and [Mr. Zoungrana] are married, but now estranged[. Mr. Zoungrana,] at some point in the past[,] unsuccessfully attempted to obtain immigration relief based upon his marriage to [Zoungrana. S]ubsequent to the occurrence of the incident at issue[—]purported "domestic violence"[—Mr. Zoungrana] filed, through [Attorney Quietmeyer], an application with the Department of Homeland Security under the federal "Violence [A]gainst Women Act," which application is subject to a confidentiality provision codified at 8 U.S.C. § 1367 and remains pending, again seeking immigration relief[. T]he application recited the version of [Zoungrana]'s alleged criminal conduct which [Mr. Zoungrana] provided to the federal government.

On July 18, 2023, [Zoungrana] filed a motion to compel discovery, referencing both mandatory discovery and discretionary discovery, which includes statements of eyewitnesses to be called at trial by the prosecution (such as [Mr. Zoungrana]). The motion was granted by the court, and the Commonwealth has provided discovery in compliance with the order. However, the prosecution

is not in possession of the information provided by [Mr. Zoungrana] to the federal government about the incident.

In view of the obvious potential for impeachment of [Mr. Zoungrana] at trial[,] represented by his out-of-court rendition of the events at issue to federal authorities and his problematic immigration status, [Zoungrana] served a subpoena upon [Mr. Zoungrana]'s immigration attorney[, Attorney Quietmeyer,] who had submitted the application on [Mr. Zoungrana]'s behalf. Specifically, this trial subpoena, issued by the Cumberland County Clerk of Courts, dated April 25, 2024, and addressed to [Attorney Quietmeyer], stated:

1. You are ordered by the Court to come to Cumberland County Courthouse at Carlise, Pennsylvania, on Monday, the 6th day of May 2024, at 9:00 o'clock A.M., and thereafter until called, to testify on behalf of [Zoungrana] in the above case, and to remain until excused.

2. And bring with you the following: Any and all submissions, petitions, filings, correspondence, requests, documents, affidavits, or other records submitted to or received from [the United States Citizenship and Immigration Services (USCIS), an agency within the United States Department of Homeland Security] relating in any way to any immigration relief sought by [Mr. Zoungrana] relating in any way to his wife, [Zoungrana] (DOB 05/14/1982).

In response to the subpoena, [on May 1, 2024,] [Attorney Quietmeyer] filed a motion to quash, citing the aforesaid confidentiality provision in the federal Immigration and Nationality Act and a confidentiality provision in Pennsylvania's Rules of Professional Conduct applicable to lawyers. The motion included as an attachment a statement by [Mr. Zoungrana] that he regarded "the information sought by the subpoena [as] my personal, private information and [as] confidential as protected by federal law." The motion was acknowledged by the Commonwealth and opposed by [Zoungrana].

Argument on [Attorney Quietmeyer]'s motion to quash the subpoena was held by the [trial] court on June 3, 2024. At the argument, [Attorney Quietmeyer] did not dispute that the application in question may have contained a version of the event at issue presented by [Mr. Zoungrana] to the federal government:

The Court: . . . [Y]ou told me that it was an application for the Violence Against Women Act.

Attorney Quietmeyer: Uh-hum.

The Court: . . . So[,] you must have necessarily averred stuff in there to meet the requirements for that Act?

Attorney Quietmeyer: Correct.

The Court: Which I would imagine are detailing the same incident as what is at issue in the state trial, is that right?

Attorney Quietmeyer: Yes, your Honor.

[Attorney Quietmeyer] alluded in the argument to the attorney work-product doctrine, reiterated his position as expressed in the motion based upon the aforesaid confidentiality provisions, and emphasized the legislative rationale of precluding criminal defendants from accessing information that "they [could] then use . . . to track down the victim and engage in witness intimidation, et cetera, et cetera."

In further support of his position regarding the federal statute, [Attorney Quietmeyer] cited the cases of **Pennsylvania v. Ritchie**, 480 U.S. 39[] (1987); **Cash v. Wetzel**, 2017 WL 11602655 (E.D. Pa. 2017); **Demaj v. Sakaj**, 2012 WL 476168 (D. Conn. 2012), and **Hawke v. United States Department of Homeland Security**, 2008 WL 4460241 (N.D. Cal. 2008). [Zoungrana]'s counsel argued in opposition to the motion, and added that Pennsylvania Rule of Evidence 413 (Evidence of Immigration Status) expressly contemplates the admission of evidence as to a criminal defendant's immigration status where it "is reliable and relevant, and . . . its probative value outweighs [its] prejudicial nature."

On September 20, 2024, the court issued an order granting [Attorney Quietmeyer]'s motion to quash, with a narrowly[ ]drawn exception:

1. The Motion to Quash Subpoena is GRANTED, in part, to the extent that the subpoena compels [Attorney Quietmeyer]'s presence and testimony at trial. Said portion of the subpoena is hereby QUASHED at this time, without further information as to whether and under what circumstances his testimony would be necessary; and

2. The Motion to Quash Subpoena is DENIED, in part, to the extent that the subpoena shall stand, regarding the directive to [Attorney Quietmeyer] to transmit to [Zoungrana's counsel] "any documents submitted to or received from USCIS relating in any way to any immigration relief" sought by [Mr. Zoungrana] in the above-captioned criminal matter relating in any way to his wife, [Zoungrana], as more specifically set forth herein." Following the proffer made by [Zoungrana's counsel] as to what he expects to find in said documents and his intended use for same at trial, however, the documents turned over shall be LIMITED to material containing a narrative description or summary of the events, and any related documents to provide context for such narrative or summary, alleged to have taken place on or about May 9, 2023[,] (which is the alleged date of incident on the Criminal Information). [Attorney] Quietmeyer may redact any personally identifiable information regarding [Mr. Zoungrana]'s home or work address, telephone number, or other information revealing how he might otherwise be contacted. Such documentation shall be turned over to [Zoungrana's counsel] within 14 days of this [o]rder; and

3. We address herein only the disclosure of documents pursuant to the subpoena and do not rule whether such documents or references to immigration would be admissible at trial pursuant to [Pa.R.E.] 413 or any other rule of evidence.

Trial Court Opinion, 11/27/24, at 2-7 (footnotes omitted).

Attorney Quietmeyer filed a timely appeal. Both he and the trial court have complied with Pa.R.A.P. 1925. Attorney Quietmeyer presents the following issues for our review:

1. Whether the [trial court] erred by stating [Attorney Quietmeyer] failed to meet his burden for asserting attorney[-]client privilege?

2. Whether the [trial court] was impermissibly overbroad in [its] legal reasoning as to why [Attorney] Quietmeyer is not afforded any confidentiality or privilege from disclosure?

- 5 -

3.  Whether the [trial court] abused [its] discretion because defense counsel did not follow proper discovery requirements?

4.  Whether the [trial court] abused [its] discretion by not ordering an in camera review of the requested document?

Appellant's Brief, at 2-3 (footnotes omitted).

We must first address whether the trial court's discovery order is an appealable collateral order. Pennsylvania Rule of Appellate Procedure 313 states that "[a]n appeal may be taken as of right from a collateral order of a trial court" and defines a "collateral order" as "an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that[,] if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(a)-(b).

> Generally, discovery orders are deemed interlocutory and not immediately appealable because they do not dispose of the litigation. . . . All three factors set forth in Rule 313 must be satisfied. The Pennsylvania Supreme Court has stated that Rule 313 must be construed narrowly: "Claims must be analyzed not with respect to the specific facts of the case, but in the context of the broad public policy interests that they implicate. Only those claims that involve interests 'deeply rooted in public policy' can be considered too important to be denied review."

**Branham v. Rohm and Haas Co.**, 19 A.3d 1094, 1101 (Pa. Super. 2011) (quoting **Leber v. Stretton**, 928 A.2d 262, 265 (Pa. Super. 2007)).

Pennsylvania courts have consistently recognized that discovery orders rejecting claims of privilege and requiring disclosure constitute collateral orders that are immediately appealable under Rule 313. **See Commonwealth v. Flor**, 136 A.3d 150, 155 (Pa. 2016) ("[D]iscovery orders

rejecting claims of privilege and requiring disclosure constitute collateral orders that are immediately appealable under Rule 313."); ***Holland v. Physical Therapy Institute, Inc.***, 296 A.3d 619, *5 (Pa. Super. 2023) (Table).[2]  Accordingly, we conclude that Attorney Quietmeyer has properly appealed from a collateral order pursuant to Pa.R.A.P. 313, and we proceed to review the questions raised on the merits.

Whether the attorney-client privilege protects a communication from disclosure is a question of law. ***In re Thirty-Third Statewide Investigating Grand Jury***, 86 A.3d 204, 215 (Pa. 2014).  Our standard of review over questions of law is *de novo*, and our scope of review is plenary.  ***Id.***

The attorney-client privilege, as it applies in criminal matters, is codified at section 5916 of the Pennsylvania Judicial Code:  "In a criminal proceeding[,] counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client."  42 Pa.C.S.A. § 5916.

Evidentiary privileges are not favored in Pennsylvania.  ***See Reginelli v. Boggs***, 181 A.3d 293, 300 (Pa. 2018).  The attorney-client privilege operates to protect attorney-client communications made for the purpose of obtaining or providing professional legal advice.  ***See Commonwealth v.***

---

[2] ***See*** Pa.R.A.P. 126(b) (unpublished, non-precedential memorandum decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

***Lehman***, 275 A.3d 513, 523 (Pa. Super. 2022) (citing ***Flor***, 136 A.3d at 158).

The privilege only applies when the following requirements are met:

> (1)    The asserted holder of the privilege is or sought to become a client;
>
> (2)    The person to whom the communication was made is a member of the bar of a court, or his [or her] subordinate;
>
> (3)    The communication relates to a fact of which the attorney was informed by his [or her] client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services[,] or assistance in a legal matter, and not for the purpose of committing a crime or tort; [and]
>
> (4)    The privilege has been claimed and is not waived by the client.

***Lehman***, 275 A.3d at 523 (quoting ***Commonwealth v. Mrozek***, 657 A.2d 997, 998 (Pa. Super. 1995)).  The party asserting the privilege bears the burden of producing sufficient evidence to show that it has been properly invoked.  ***See Ford-Bey v. Professional Anesthesia Services of North America, LLC***, 229 A.3d 984, 991 (Pa. Super. 2020).  If the trial court finds that the party invoking the privilege has proffered sufficient proof, the burden shifts to the party seeking disclosure to proffer sufficient facts showing that disclosure should be compelled either because of waiver or an exception to the privilege.  ***See id.***

In ruling on Attorney Quietmeyer's motion to quash, the trial court permitted the discovery of "any documents submitted to or received from USCIS relating in any way to any immigration relief sought by [Mr. Zoungrana] in the above-captioned criminal matter relating in any way to his wife,

[Zoungrana]." Order, 9/20/24, at ¶ 2. The order limited the documents to be turned over to "material containing a narrative description or summary of the events, and any related documents to provide context for such narrative or summary, alleged to have taken place on or about May 9, 2023[.]" ***Id.*** Therefore, we must determine whether the trial court abused its discretion in holding that the attorney-client privilege did not apply to the documents specified in its order.

Neither Attorney Quietmeyer nor the trial court discusses the requirements delineated above that precede the application of the attorney-client privilege. ***See Lehman***, ***supra***. In lieu of briefing the requirements discussed above, Attorney Quietmeyer instead points to various statutory provisions that he claims prevent disclosure of the subpoenaed documents.[3] ***See*** Appellant's Brief, at 6-8, 13-14. The first is Pennsylvania Rule of Professional Conduct 1.6(a), which states: "[a] lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in [the statutory exceptions]." Pa.R.P.C. 1.6(a). However, the Rules of Professional Conduct are not substantive law. ***Perelman v. Raymond G. Perelman Revocable Trust***, 259 A.3d 1000, 1010 (Pa. Super. 2021). Therefore, Attorney

---

[3] Attorney Quietmeyer's first two issues on appeal pertain to whether the trial court erred in holding that he did not meet his burden to assert the attorney-client privilege. Therefore, we will treat them as one issue.

Quietmeyer's claim regarding Rule 1.6(a) is unavailing. *See also Live Nation Entertainment, Inc. v. Weber Gallagher Simpson Stapleton Fires & Newby, LLP*, 331 A.3d 624, at *6 (Pa. Super. 2024) (Table) ("Rule 1.6 is an ethical rule . . . it does not control whether certain materials are privileged or beyond the scope of discovery.").

Considering the requirements set forth in *Lehman*, the trial court was correct in holding that the attorney-client privilege did not apply to the subpoenaed documents because they were not communications made between Attorney Quietmeyer and Mr. Zoungrana. Instead, what Attorney Quietmeyer sought to protect with his motion to quash were documents he prepared and submitted to a third party, the USCIS, or that were sent to him by the USCIS regarding Mr. Zoungrana. Therefore, because the documents were not communications between Mr. Zoungrana and Attorney Quietmeyer made for the purpose of obtaining or facilitating legal advice, and because they were disclosed to or created by a third party, we do not find that the privilege applies to them. *Lehman*, *supra*.

Next, Attorney Quietmeyer points to two separate sections of the Protection from Abuse Act (PFA).[4] Section 6102 defines confidential communications as "[a]ll information . . . transmitted between a victim and . . . [an] advocate in the course of the relationship[,]" and section 6116 provides that "a domestic violence [] advocate . . . shall not be competent nor

---

[4] 23 Pa.C.S.A. §§ 6101-6122.

permitted to testify or to otherwise disclose confidential communications made to or by the [] advocate by or to a victim." 23 Pa.C.S.A. §§ 6102, 6116. When ascertaining the meaning of a statute, if the language is clear, we give the words their plain and ordinary meaning. **Commonwealth v. Lowrey**, 333 A.3d 440, 444 (Pa. Super. 2025). Here, the sections cited by Attorney Quietmeyer do not protect the sought-after documents from disclosure because those documents do not constitute "confidential communications made to or by the [] advocate by or to a victim" for the same reasons discussed above: they were not confidential communications between Attorney Quietmeyer and Mr. Zoungrana, but rather communications with the USCIS, a third party. Therefore, the PFA does not prevent disclosure here.

Last, Attorney Quietmeyer points to the disclosure provision of the Immigration and Nationality Act (INA),[5] which prohibits the disclosure of information submitted under certain subsections. **See** Appellant's Brief, at 13-14. The disclosure provision provides:

**(a) In general**

Except as provided in subsection (b), in no case may the Attorney General, or any other official or employee of the Department of Justice, the Secretary of Homeland Security, the Secretary of State, or any other official or employee of the Department of Homeland Security or Department of State (including any bureau or agency of either of such Departments)—

\* \* \*

---

[5] 8 U.S.C. § 1367.

- 11 -

**(2)** permit use by or disclosure to anyone (other than a sworn officer or employee of the Department, or bureau or agency thereof, for legitimate Department, bureau, or agency purposes) of any information which relates to an alien who is the beneficiary of an application for relief under paragraph[s] (15)(T), (15)(U), or (51) of section 101(a) of the Immigration and Nationality Act or section 240A(b)(2) of such Act.

8 U.S.C. § 1367(a)(2).[6]

The trial court notes that, as held by multiple federal courts, the INA's disclosure restriction "specifies a limited class of government personnel to which it applies." Trial Court Opinion, 11/27/24, at 9-10 (citing, e.g., *Horacius v. Richard*, 2024 WL 557831 (S.D. Fla. Jan. 4, 2024) (holding plain language of section 1367 bars disclosure only by enumerated persons and entities)).[7] Again, when interpreting a statute, if the language is clear, we give the words their plain and ordinary meaning. *See Lowrey*, *supra*. Here, the language in section 1367 applies only to specific, enumerated government officials and employees; Attorney Quietmeyer does not fall within one of those specified groups. Therefore, giving the language of the statute its plain and ordinary meaning, Attorney Quietmeyer is not prevented from disclosing the

---

[6] As noted by Attorney Quietmeyer, *Commonwealth v. Riojas*, 158 A.3d 169 (Pa. Super. 2016) (Table), is the only Pennsylvania case to analyze the disclosure provision of 8 U.S.C. § 1367(a)(2). Because it was filed prior to May 1, 2019, it does not carry persuasive value with this Court. *See* Pa.R.A.P. Rule 126(b).

[7] *See Commonwealth v. Lang*, 275 A.3d 1072, 1083 (Pa. Super. 2022) ("we may consider federal court decisions . . . as persuasive authority").

relevant documents under section 1367, and his argument to the contrary is without merit.

Attorney Quietmeyer's remaining arguments deal with discovery, generally, and are not limited to the application of the attorney-client privilege. In reviewing the propriety of a discovery order, we determine whether the trial court committed an abuse of discretion. ***Carlino East Brandywine, L.P., v. Brandywine Village Associates***, 301 A.3d 470, 478 (Pa. Super. 2023).

> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias[,] or ill-will as shown by the evidence or the record, discretion is abused.

***Id.*** (quoting ***Commonwealth v. Crispell***, 193 A.3d 919, 939 (Pa. 2018)).

Attorney Quickmeyer avers that the trial court erred in quashing his subpoena because defense counsel did not follow "proper discovery requirements." Appellant's Brief, at 17-18. Attorney Quietmeyer asserts that, because the subpoenaed documents were sought during the pre-trial phase, the requests should be governed by Pa.R.Crim.P. 573, which provides:

> [b]efore any disclosure or discovery can be sought under these rules by either party, counsel for the parties shall make a good[-]faith effort to resolve all questions of discovery, and to provide information required or requested under these rules as to which there is no dispute. When there are items requested by one party which the other party has refused to disclose, the demanding party may make appropriate motion.

***Id.***

According to Attorney Quietmeyer, because Zoungrana's counsel did not contact him about the requested materials prior to issuing the subpoena, the trial court should have quashed the subpoena. **See** Appellant's Brief, at 18. Additionally, Attorney Quietmeyer claims that the subpoena should have been quashed because Zoungrana's counsel failed to explain what steps he had taken to obtain the requested documentation and how Zoungrana would be prejudiced if the documents were not produced. **See id.** at 18-19.

As this Court has previously observed, "Rule 573 does not address a criminal defendant's attempt to seek discovery from a third party." **Commonwealth v. Berger**, 96 A.3d 1049, 1051 (Pa. Super. 2014); **see also Commonwealth v. Alston**, 233 A.3d 795, 804 (Pa. Super. 2020) (noting "majority of cases involving Rule 573(E) arise following the Commonwealth's failure to produce discovery or information to a defendant"). Further, Pa.R.Crim.P. 107, which sets forth the requirements for the subpoena of a witness in a criminal proceeding, contains no requirements akin to what Attorney Quietmeyer alleges Zoungrana's counsel failed to do. Attorney Quietmeyer has failed to produce a case imposing such requirements in similar circumstances, i.e., defense counsel subpoenaing the alleged victim's counsel in a criminal matter, and we will not impose them here.[8] Therefore, this claim also fails.

_____

[8] Attorney Quietmeyer's briefing on this claim is also insufficient because he does not cite any legal authority in support of his argument regarding the
*(Footnote Continued Next Page)*

Attorney Quietmeyer last argues that the trial court erred by not ordering an *in camera* review of the requested documents. Again, as with his discovery-procedure argument, Attorney Quietmeyer cites no case law in support of his argument. Pennsylvania Rules of Criminal Procedure Rule 573(F) provides the following regarding *in camera* review of discovery materials:

> Upon a sufficient showing, the court **may** at any time order that the discovery or inspection be denied, restricted, or deferred, or make such other order as is appropriate. **Upon motion of any party**, the **court** may permit the showing to be made, in whole or in part, in the form of a written statement to be inspected by the court *in camera*.

Pa.R.Crim.P. 573(F) (emphasis added). The language of Rule 573(F) is clear that, upon the appropriate motion, the trial court has discretion as to whether to order an *in camera* review. Here, however, Attorney Quietmeyer did not make the requisite motion. Without such a motion, the trial court's discretion to order an *in camera* review was never invoked, and, therefore, it did not err in not doing so. Accordingly, this claim, too, is without merit.

Order affirmed.

---

alleged shortcomings in defense counsel's discovery request. ***See Commonwealth v. Midgley***, 289 A.3d 1111, 1118 (Pa. Super. 2023) ("Where the appellant fails to develop an issue or cite legal authority, we will find waiver of that issue."); ***see also Commonwealth v. Martz***, 232 A.3d 801, 811 (Pa. Super. 2020) (finding waiver where appellant did not provide citation to authority to support argument).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 11/26/2025