J-S28036-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYREE A. MORRIS | : | |
| | : | |
| Appellant | : | No. 1953 EDA 2023 |

Appeal from the PCRA Order Entered July 20, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0012194-2015

BEFORE: STABILE, J., MURRAY, J., and LANE, J.

MEMORANDUM BY LANE, J.: **FILED OCTOBER 16, 2024**

Tyree A. Morris ("Morris") appeals from the order dismissing his first petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1] We affirm.

Morris and Q.H. ("the Victim") purchased a rowhome together in Philadelphia. "The two had previously been in a romantic relationship . . . but the relationship ended before they moved into the house. They slept in separate bedrooms." ***Commonwealth v. Morris***, 253 A.3d 261 (Pa. Super. 2021) (unpublished memorandum at **1-2), *appeal denied*, 270 A.3d 1102 (Pa. 2022). The Victim's nine-year-old son also lived with them.

Approximately two months after they moved into the house,

> [i]n the early morning hours of October 17, 2015, [Morris] entered [the Victim's] room[,] woke her up and asked her if she was

---

[1] ***See*** 42 Pa.C.S.A. §§ 9541-9546.

leaving him. When [the Victim] said she was[, Morris] punched her in the face. He then pulled out a gun, told [the Victim] to turn around[,] and tied her wrists behind her back. [Morris] told [the Victim] that if she was not quiet, he would go upstairs and shoot her son. He then removed her underwear and anally penetrated her with his penis. After anally penetrating her, [Morris] took [the Victim] to the bathroom, wiped her off, and dressed her. Now back in the bedroom, [Morris] told [the Victim] to put her shoes on, and he put the gun on the bed. While [Morris] was putting a shirt on, [the Victim] was able to untie herself and ran out of the bedroom. Shortly after [the Victim ran out] of the house, [Morris], who was chasing her, [fired] his gun at [the Victim] at least seven times. [Morris] caught up to [the Victim] across the street from their home, grabbed her and tried to shoot her. However, the gun did not fire. [Morris] then started choking [the Victim] and dragged her on the pavement behind a parked vehicle. [Morris] continued strangling [the Victim] until she passed out. . . . [Morris] fled the scene in his vehicle.

*Id*. at *2.

Portions of this incident were witnessed by Krystal Gross, who was in a car with her friend at approximately 3:00 to 3:30 a.m. Gross observed a woman — later determined to be the Victim — screaming for help and running toward her car. *See* N.T., 8/24/16, at 4-5. Gross saw a man "running behind her" with "something in his hand pointing [*sic*]," and Gross saw "sparks." *Id*. at 5, 9. The man entered a black or navy colored vehicle and "sped off." *Id*. at 6-7. Gross called the police.

The Victim was treated at the hospital and underwent a rape kit examination by sexual assault nurse examiner Christine Campbell. "The [V]ictim identified Morris as her assailant. . . . DNA evidence taken from the [V]ictim's rectum, and from a cloth still tied to the [V]ictim's wrist at the crime

scene, matched that of Morris." ***Morris***, 253 A.3d 261 (unpublished memorandum at *2).

Police officers searched the home and the area outside the home. On the street, officers recovered a Taurus handgun and seven fired cartridge casings ("FCCs"), and subsequent testing showed this handgun and the FCCs matched. ***See*** N.T., 8/24/16, at 81, 154-55.

Finally, relevant to Morris' issues on appeal, we summarize that around 4:40 a.m. that same morning, Philadelphia Police Officer Matthew Stankiewicz was in a marked police car when he responded to a call about a shooting that "involved . . . a dark colored sedan." ***Id***. at 13-14. Officer Stankiewicz observed a black Buick with no license plate proceed at a high rate of speed. ***See id***. at 14. He followed the Buick until it stopped and Morris exited the vehicle. Officer Stankiewicz exited his own patrol car and yelled at Morris to stop. Morris turned around and "faced" the officer but continued to walk away. ***Id***. at 15. Officer Stankiewicz observed a shotgun, later determined to be loaded, in plain view in the rear of the Buick. The officer ran toward Morris, who fled. The following day, Officer Stankiewicz identified Morris in a photo array. He also identified Morris at trial and testified that during the vehicle stop, there were streetlights and he observed Morris' face for "a little bit more than three seconds." ***Id***. at 15, 17, 30.

Subsequently, police officers found a license plate inside the back window of the Buick, and determined the vehicle was registered to Morris. In

addition to the shotgun observed in plain view, officers recovered a loaded Beretta handgun from the Buick. *See* N.T., 8/24/16, at 61, 84-85. Approximately one week after the assault, Morris was arrested in Maryland following a two-mile car chase. *See* PCRA Court Opinion, 7/24/20, at 7.

The Commonwealth charged Morris with attempted murder, rape, and related offenses, as well as firearms charges with respect to three firearms: the Taurus handgun recovered from the street, and the shotgun and Beretta handgun found in the Buick. The charges proceeded to a jury trial, where Morris was represented by Robert Mozenter, Esquire ("Trial Counsel"). The Victim, the witness Gross, Officer Stankiewicz, and Nurse Campbell testified consistently with the above summary.

Morris testified in his own defense. He maintained that he and the Victim had consensual sexual contact, and he denied that he assaulted, bound, or pointed a gun at the Victim. *See* N.T., 8/24/16, at 207. Morris also denied ownership of the two guns found in the Buick, stating he purchased the vehicle two days before the assault, but his uncle, Henry Morris ("Uncle"), "and [another] guy, Murphy," drove the car as a part of Morris' cleaning business. *See id*. at 182-84.

Morris also presented the testimony of his mother, Deborah Morris ("Mother"), that one month after the assault, the Victim called her and asked if Morris would "sign the house over to her [if] she would drop the charges." *Id*. at 174. Mother stated that she reported this information to Trial Counsel.

*See id*. However, on cross-examination by Trial Counsel, the Victim denied she attempted to "make a deal" to "drop the charges" if Morris gave her the house. *See* N.T. Trial, 8/23/16, at 152-53.[2] The Victim also stated that after the assault, she did not return to the house. *See id*. at 91-92.

The jury found Morris guilty of: one count each of attempted murder, aggravated assault, rape, sexual assault, and possession of an instrument of crime; two counts each of firearms not to be carried without a license and carrying firearms on public streets in Philadelphia; and three counts of persons not to possess a firearm.[3]

On April 21, 2017, the trial court imposed an aggregate sentence of twenty-five to fifty years' imprisonment. Additionally, the trial court found Morris to be a sexually violent predator under the Sexual Offender Registration

_____

[2] The PCRA court points out there are three volumes of testimony dated August 23, 2016: (1) one entitled "Motion Volume 2;" (2) one entitled "Trial (Jury) Volume 1;" and (3) another volume also entitled "Trial (Jury) Volume 1," but misdated August 23, **2017**, and bearing the heading "Arraignment/Opening Statements" on the first page. For ease of discussion, we cite the first volume ("Motion Volume 2") as "N.T. Motion, 8/23/16." We cite the second volume ("Trial (Jury) Volume 1" as "N.T. Trial, 8/23/16." Finally, we cite the third volume as "N.T. Opening, 8/23/16."

[3] The trial court bifurcated the three charges of persons not to possess a firearm, such that the jury did not hear evidence and enter its verdict on these counts until **after** it had found Morris guilty of the other counts. *See* N.T., 8/25/16, at 10-12, 18-19.

and Notification Act.[4] Morris filed a post-sentence motion, which the trial court denied.

Michael Wiseman, Esquire ("Direct Appeal Counsel"), entered his appearance on behalf of Morris and filed a timely notice of appeal. However, he subsequently filed a motion to dismiss the appeal, and this Court granted the dismissal on December 13, 2017. *See Commonwealth v. Morris*, 2950 EDA 2017 (Pa. Super. 2017) (order).

On January 18, 2019, Direct Appeal Counsel filed a PCRA petition on Morris' behalf, raising several claims of Trial Counsel's ineffective assistance. The PCRA court held a brief hearing on Morris' motion for discovery, related to his claim that Trial Counsel was ineffective for not moving for production of text messages on his cell phone.[5] Morris claimed these messages would have shown "the Victim was biased because of [an] interest in the home." N.T., 1/2/20, at 4. The PCRA court denied relief, finding the sought-after evidence would have merely corroborated Mother's testimony at trial and thus there were "no extraordinary circumstances" justifying discovery. *Id*. The PCRA court dismissed Morris' remaining claims on the merits.

Morris appealed, and this Court affirmed, albeit on a different ground — that the petition was untimely under the PCRA's filing requirements. Morris

---

[4] *See* 42 Pa.C.S.A. §§ 9799.10-9799.41.

[5] Morris claims the police seized his cell phone at the time of his arrest. *See* Morris' Brief at 44.

filed a petition for allowance of appeal, which the Pennsylvania Supreme Court denied. *See Morris*, 253 A.3d 261 (unpublished memorandum), *appeal denied*, 270 A.3d 1102.

On February 11, 2022, Morris filed a second PCRA petition, *pro se*, claiming he was entitled to restoration of his PCRA rights, as Direct Appeal Counsel failed to file his first petition in a timely manner. The Commonwealth did not oppose relief. The PCRA court reinstated Morris' PCRA rights[6] and appointed current counsel, Peter Levin, Esquire. Current counsel filed an amended PCRA petition, then a supplemental PCRA petition, reraising the claims of ineffective assistance of counsel that were in the first PCRA petition. The Commonwealth filed responses, suggesting dismissal on the merits. The PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss the PCRA petition without a hearing, and on July 20, 2023, dismissed the petition. Morris filed a timely notice of appeal, and both he and the PCRA court have complied with Pa.R.A.P. 1925(b). In our review, we consider both the PCRA court opinion filed in 2020, following Morris' first PCRA petition, and its present opinion.

Morris presents the following issues for our review:

1. Trial Counsel ineffectively failed to object to pervasive hearsay evidence admitted through Nurse Campbell.

---

[6] We note there is no order in the certified record ruling on Morris' *pro se* PCRA petition, nor a relevant entry on the trial court docket. Nevertheless, the PCRA court's opinion stated that it granted the relief requested, and we do not disturb this ruling. *See* PCRA Court Opinion, 9/22/23, at 2.

2. Following the prosecutor's intentional flouting of an evidentiary ruling, Trial Counsel ineffectively failed to move for a mistrial; for a curative instruction or move to strike the offending evidence; and Trial Counsel ineffectively failed to object to the mention of the questioned evidence during opening statements, and ineffectively failed to move *in limine* to preclude this evidence.

3. [Trial] Counsel ineffectively failed to move to sever weapons charges.

4. The [trial] court erred in denying two motions to excuse a juror for cause.

5. [Direct Appeal] Counsel was ineffective for failing to appeal the juror issue before dismissing [Morris'] direct appeal.

6. [Trial] Counsel ineffectively failed to move for production of the data on [Morris'] cellphone, which would have included text messages that would have demonstrated [the Victim's] bias based on an interest in the home.

7. [Direct Appeal] Counsel was ineffective for failing to argue that Trial Counsel was ineffective for failing to request transcript of Officer Stankiewicz's police radio.

8. Counsel was ineffective for failing to raise Trial Counsel['s] ineffective[ness] for failing to object when the trial court said there were no grounds for a **Kloiber**[7] instruction.

9. [Direct Appeal] Counsel was ineffective for failing to argue Trial Counsel was ineffective for failing to object to the court's jury instruction regarding Officer Stankiewicz's identification.

10. Trial Counsel [was] ineffective for failing to investigate and interview [Uncle].

11. The PCRA court erred in not granting an evidentiary hearing[.]

---

[7] **See Commonwealth v. Kloiber**, 106 A.2d 820 (Pa. 1954).

Morris' Brief at 8 (issues reordered and unnecessary capitalization omitted).[8]

"[T]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the [PCRA] court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Walker**, 110 A.3d 1000, 1003 (Pa. Super. 2015) (citation omitted).

Morris raises several claims of ineffective assistance of counsel. We note:

> [C]ounsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner. To obtain relief, a petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the petitioner. . . . [A] properly pled claim of ineffectiveness posits that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission.

---

[8] Preliminarily, we address the large number of claims raised by Attorney Levin. Additionally, whereas the PCRA court has provided clear and well-reasoned analyses for denying relief on each issue, often relying on factors ignored in Morris' amended PCRA petition, the brief largely fails to ignore the court's reasoning, and instead is merely a near-identical reproduction of the amended PCRA petition. We remind counsel of "the importance of expert, focused appellate advocacy. While criminal defendants often believe that the best way to pursue their appeals is by raising the greatest number of issues, actually, the opposite is true: selecting the few most important issues succinctly stated presents the greatest likelihood of success." **See Commonwealth v. Ellis**, 626 A.2d 1137, 1140-41 (Pa. 1993) (citation omitted); **see also Commonwealth v. Walker**, 954 A.2d 1249, 1255 (Pa. Super. 2008) (*en banc*) (stating that "[t]his Court is an error correcting court").

*Id*. at 1003. "[A] claim 'has arguable merit where the factual averments, if accurate, could establish cause for relief.'" ***Commonwealth v. Pitt***, 313 A.3d 287, 293 (Pa. Super. 2024) (citation omitted). "A petitioner establishes prejudice when he demonstrates 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" ***Walker***, 110 A.3d at 1003. "Failure to prove any of the three elements will result in dismissal of the ineffectiveness claim." ***Pitt***, 313 A.3d at 293 (citation omitted). "[C]ounsel cannot be found ineffective for choosing not to raise a meritless claim." ***Id***. at 295 (citation omitted).

With respect to a claim that counsel was ineffective for not objecting to evidence, when the subject evidence was cumulative of other, properly admitted evidence, a petitioner fails to establish prejudice. ***See Commonwealth v. Wallace***, 724 A.2d 916, 923 (Pa. 1999). Under this scenario, a petitioner also fails to show counsel did not have a reasonable basis for not objecting to the evidence. ***See Commonwealth v. Housman***, 226 A.3d 1249, 1264-65 (Pa. 2020).

In his first issue, Morris avers the PCRA court erred in denying relief on his claim that Trial Counsel was ineffective for not objecting to hearsay evidence admitted through Nurse Campbell. "Admission of evidence is within the sound discretion of the trial court and will be reversed only where the court clearly abused that discretion." ***Commonwealth v. Hardy***, 918 A.2d 766, 776 (Pa. Super. 2007). Generally, hearsay is not admissible. ***See***

Pa.R.E. 802. "Hearsay is a statement, other than one made by the declarant while testifying at trial, offered into evidence to prove the truth of the matter asserted." **Hardy**, 918 A.2d at 777 (*citing* Pa.R.E. 801(c)). Rule of Evidence 803(4) provides that the hearsay rule does not exclude a statement that:

> (A) is made for — and is reasonably pertinent to — medical treatment or diagnosis in contemplation of treatment; and
>
> (B) describes medical history, past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to treatment, or diagnosis in contemplation of treatment.

Pa.R.E. 803(4). The comment to the rule states: "Pa.R.E. 803(4) . . . permits admission of statements made for purposes of medical diagnosis only if they are made in contemplation of treatment. Statements made to persons retained solely for the purpose of litigation are not admissible under this rule."

Pa.R.E. 803(4), *Comment*.

> Additionally, we note:
>
> Even if a court does wrongly admit hearsay, this Court will not disturb a verdict on that basis alone if the admission constitutes harmless error. Error is harmless if: (1) the prejudice to the appellant was nonexistent or *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted, substantially similar and properly admitted evidence; or (3) the properly admitted and uncontradicted evidence was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

**Hardy**, 918 A.2d at 777 (citations omitted).

Morris contends that at trial, Nurse Campbell testified about the Victim's description of her assailant and the time and place of the assault, and the

Victim's statements that Morris punched, strangled, and threatened her. Morris emphasizes this hearsay evidence was not admissible under the medical diagnosis or treatment exception, because the Victim did not make the statements for medical treatment, but rather in contemplation of litigation. Morris further reasons that by the time Nurse Campbell examined the Victim, the Victim's medical treatment and diagnoses were already complete.

In denying relief, the PCRA court found that Morris failed to establish he was prejudiced in light of the overwhelming trial evidence presented against him. The court reasoned:

> ***[R]egardless of whether the hearsay statements were admissible under Rule 803(4)***, [Morris'] claim fails because the challenged testimony was cumulative of other evidence in the case, including [the Victim's] own in-court testimony, and therefore, it could not have prejudiced [Morris. ***See Housman***, 226 A.3d at 1264.] At trial, [the Victim], who lived with [Morris] and was in a relationship with [him] for several years, confidently identified [him] as the person who assaulted her. [N.T. Trial, 8/23/16, at 94.] Shortly after the assault, at the hospital, [the Victim] gave a statement to police in which she identified [Morris] as the individual who sexually assaulted and shot at her. [***Id***.] at 108-09. She further testified that after she affirmed that her relationship with [Morris] was over, [Morris] punched her in the face, brandished a gun, tied her wrists behind her back, and then anally penetrated her with his penis. [***Id***.] at 94, 98, 100, 140. The time and the location of the assault were also established by [the Victim's] in-court testimony. Accordingly, the [Victim's] out-[of-]court-statements . . . that came into evidence through [N]urse Campbell were also testified to in court by [the Victim] and subjected to cross-examination by [Trial C]ounsel.

PCRA Court Opinion, 7/24/20, at 10 (emphasis added). In addition to the Victim's testimony, the PCRA court cited:

proof that [Morris'] DNA was present in [the Victim's] rectum and on the cloth that was tied to [her] wrist[;] ballistics evidence corroborating . . . that [Morris fired a gun] at her, including seven FCCs recovered from the crime scene that were all fired from the firearm recovered from the crime scene[; witness Gross' testimony that she] saw a woman running from a man while screaming, "help, he's trying to kill me[;" m]edical evidence document[ing the Victim's] injuries[; and] compelling evidence of [Morris'] consciousness of guilt, as he fled from the scene of the attack with two firearms in his car, and subsequently was arrested in Maryland after leading police on a car chase.

*Id*. at 10-11 (record citations omitted). The PCRA court thus concluded that even if Trial Counsel had objected to any hearsay evidence, there was no reasonable probability that the outcome of Morris' trial would have been different.

After review, we conclude that the PCRA court's determination is supported by the record and free from legal error. On appeal, Morris argues solely that Nurse Campbell's testimony did not meet the medical diagnosis or treatment exception to the hearsay rule. The PCRA court, however, did not deny relief on this basis, and instead, found that "[*r*]*egardless* of whether the hearsay statements were admissible under Rule 803(f)," Morris did not establish he was prejudiced, in light of the "overwhelming" evidence against him. *Id*. at 10 (emphasis added). Morris does not address, let alone dispute, this analysis. Instead, he simply reproduces verbatim the same discussion in his amended PCRA petition that the PCRA court has clearly rejected. In the absence of any challenge to the PCRA court's reasoning, we determine no

- 13 -

relief is due. *See Hardy*, 918 A.2d at 771 (stating that this Court will not act as counsel and will not develop arguments on behalf of an appellant).

Furthermore, on the merits, we conclude the PCRA court did not abuse its discretion in denying relief. The alleged hearsay — the Victim's description of the assault and identification of him as the assailant, as testified to by Nurse Campbell — was cumulative of the testimony the Victim herself gave at trial. Furthermore, as the PCRA court points out, the DNA and ballistics evidence corroborated her testimony. Accordingly, Morris did not show he suffered prejudice, nor that Trial Counsel lacked a reasonable basis for not objecting to testimony that was merely cumulative of other, properly admitted evidence. *See Housman*, 226 A.3d at 1264-65; *see also Wallace*, 724 A.2d at 923. Thus, Morris' first issue warrants no relief.

Morris' second issue relates to his claim that Trial Counsel was ineffective in relation to evidence concerning a firearm magazine found during a search of Morris and the Victim's home. By way of background, we first summarize that Philadelphia Police Officer Christopher Brennan testified that during a search of the house, officers found a loaded firearm magazine in a kitchen cabinet. *See* N.T., 8/24/16, at 68. Trial Counsel objected, arguing the magazine was not relevant. In response, the Commonwealth acknowledged this magazine was not related to the firearms charges. *See id*. at 69. The trial court sustained defense counsel's objection. Nevertheless, immediately after this ruling, the following exchange occurred:

[Commonwealth:]  You found [the magazine] in the home?

[Officer Brennan]: Yes.

[Trial Court:]  Sustained.

Q.  There were also — how about live rounds with it?

A.  26.

[Trial Counsel:]  Objection.

*Id*. at 69-70.  At this juncture, the trial court called for a sidebar discussion, reiterating that evidence of the magazine was not relevant nor admissible because: (1) it did not match the weapons used in the attack on the Victim or found in the Buick; and (2) Morris was not charged with possession of this magazine.  *See id*. at 71, 76.

On appeal, Morris avers the PCRA court erred in denying relief on his claim that Trial Counsel was ineffective for not further challenging the Commonwealth's references to the magazine, and not objecting to prosecutorial misconduct.  This Court has explained:

> To succeed on a claim of ineffective assistance of counsel based on trial counsel's failure to object to prosecutorial misconduct, the defendant must demonstrate that the prosecutor's actions violated a constitutionally or statutorily protected right, such as the Fifth Amendment privilege against compulsory self-incrimination or the Sixth Amendment right to a fair trial, or a constitutional interest such as due process.  "To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial."

*Walker*, 110 A.3d at 1006 (citation omitted).  Additionally, we note:

- 15 -

> [o]rdinarily, admission of testimony which describes, or from which the jury may infer, past criminal conduct by a defendant constitutes reversible error. However, not all such references warrant reversal. An isolated passing reference to prior criminal activity will not warrant reversal unless the record indicates that prejudice resulted from the remark. There is no *per se* rule which requires a new trial for every passing reference to prior criminal conduct. Additionally, the possible prejudicial effect of a . . . reference to prior criminal conduct . . . may, under certain circumstances, be removed by a cautionary instruction.

*Commonwealth v. Fletcher*, 41 A.3d 892, 895 (Pa. Super. 2012) (citation and emphases omitted).

Morris claims the Commonwealth committed prosecutorial misconduct, as it "had no logical explanation for ignoring the" trial court's evidentiary ruling. Morris' Brief at 39. Morris then asserts Trial Counsel was ineffective for not: moving to strike Officer Brennan's answers to the improper questioning about the magazine; requesting a curative instruction; or objecting to the Commonwealth's reference to the magazine in its opening statement. Morris maintains these "multiple errors" caused him prejudice, as "the only proof of the sexual assault and [attempted] murder was" the Victim's testimony and "[t]his case came down to a credibility determination between" him and the Victim. *Id*. at 41.

In denying relief, the PCRA court agreed that the evidence of the magazines found in Morris' home was inadmissible. *See* PCRA Court Opinion, 7/24/20, at 15. However, the PCRA court found Morris was not prejudiced:

> [T]he jury's exposure to this evidence was momentary, and there is clearly not a reasonable probability that the fleeting references to that evidence could have affected the outcome of this case.

As to the prosecutor's opening, the reference to the two magazines was [made] in three [different] sentences. [**See** N.T. Opening, 8/23/16, at 37-39]. During the trial, there was reference made to only one of the magazines during the testimony of Officer Brennan, and the [trial c]ourt immediately sustained [Trial C]ounsel's objections to this testimony. [N.T., 8/24/16,] at 69-70. After the jury was removed, the [trial c]ourt directed the prosecutor to not ask any further questions concerning any unrelated ammunition magazines and the Commonwealth notified its additional witnesses not to testify about the magazines. [**Id**.] at 77.

Moreover, as stated above, there was overwhelming evidence to support [Morris'] convictions in this case. In light of all of that evidence, this [c]ourt is confident that the references to the magazines found in [Morris'] home were not a factor in this trial. While [T]rial [C]ounsel could have done more to keep the jury from hearing this evidence, his failure to do so did not deprive [Morris] of effective assistance of counsel. . . .

PCRA Court Opinion, 7/24/20, at 15-16.

After review of the record, we conclude that the PCRA court's determination is supported by the record and free from legal error. First, with respect to the Commonwealth's opening statement, Morris' entire discussion is that "the jury heard about inadmissible weapons magazines [o]nce during opening statements." Morris' Brief at 41. Morris provides no further explanation about the opening statement, nor citation to the place in the record where it appears. We conclude he has waived this particular claim for failure to develop an argument. **See** Pa.R.A.P. 2119(a), (c) (providing that "[i]f reference is made to [and] matter appearing in the record, the argument must set forth . . . reference to the place in the record where the matter . . . appears"); **see also Hardy**, 918 A.2d at 771.

- 17 -

With respect to Officer Brennan's testimony about the magazine, Morris does not challenge the PCRA court's discussion that the testimony was fleeting and there was overwhelming evidence against him. In the absence of any refutation of this reasoning, we conclude Morris has not overcome the PCRA court's conclusion that he has failed to establish prejudice. In any event, the record supports the PCRA court's reasoning. Trial Counsel made several objections to the Commonwealth's questioning, all of which the trial court sustained. Given the brevity of the references to the magazine, considered against the totality of all the other evidence against Morris, we determine Morris has failed to establish both arguable merit to his underlying issue and prejudice. Thus, his ineffectiveness claim fails. *See Walker*, 110 A.3d at 1006. Morris' second issue does not warrant relief.

In his third issue, Morris asserts the PCRA court erred in denying relief on his claim that Trial Counsel was ineffective for not moving to sever charges relating to the two firearms recovered from the Buick. This Court has explained:

> "Whether to join or sever offenses for trial is within the trial court's discretion and will not be reversed on appeal absent a manifest abuse thereof, or prejudice and clear injustice to the defendant."

> Pennsylvania Rules of Criminal Procedure 582(A)(1) provides that distinct offenses which do not arise out of the same act or transaction may be tried together if the "evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion[] or the offenses charged are based on the same act or transaction." Pa.R.Crim P. 582(A)(1)(a)-(b). . . .

- 18 -

***Commonwealth v. Knoble***, 188 A.3d 1199, 1205 (Pa. Super. 2018) (some citations omitted). "The critical factor . . . is whether the accused has been prejudiced by the trial court's decision not to sever. The accused bears the burden of establishing such prejudice." ***Commonwealth v. Lopez***, 739 A.2d 485, 501 (Pa. 1999) (citations omitted).

Evidence of another crime or act may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, absence of mistake, or lack of accident. ***See*** Pa.R.E. 404(b)(2). "In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." ***Id***. "When a person knows that he is wanted in connection with a criminal investigation, and flees or conceals himself, such conduct is admissible as evidence of consciousness of guilt." ***Commonwealth v. Hudson***, 955 A.2d 1031, 1036 (Pa. Super. 2008).

Morris asserts the PCRA court erred in denying relief on his claim that Trial Counsel was ineffective for not moving to sever the charges relating to the two firearms recovered from the Buick. While Morris acknowledges he "was alleged to have" fled the scene in the Buick, he maintains that the firearms "had nothing to do with" — and were recovered "well after" — the attack on the Victim. Morris' Brief at 35, 37 (unnecessary punctuation omitted). Morris points out the attack on the Victim involved a different weapon. Morris analogizes the firearms found in the Buick to the magazine found in the home, which the trial court ruled was not relevant. Morris

- 19 -

maintains that had Trial Counsel moved to sever the charges, the trial court "would have been obliged" to grant the motion. *Id*. at 34. Finally, Morris contends he "was prejudiced by being tried with the gun charges without his uncle testifying because . . . his uncle would have explained that he was . . . driving the Buick with the guns." *Id*.

In denying relief, the PCRA court found that Morris' act of fleeing the scene in the Buick was "an integral part of the criminal transaction involving the attack on" the Victim. PCRA Court Opinion, 7/24/20, at 12. The court reasoned:

> It is well-established that efforts to flee from the scene of a crime are an essential part of the history of the case and admissible to show consciousness of guilt and the means employed to escape arrest, even if other crimes are committed during the flight.
>
> The two guns here at issue were found in the car used by [Morris] to flee the crime scene and evade arrest after his attack on [the Victim]. The guns in the getaway car clearly could have facilitated [Morris'] escape and were therefore part of the same criminal transaction as the attack on [the Victim]. Accordingly, the [trial c]ourt would have properly denied any motion by [Trial C]ounsel to sever these gun charges.

*Id*. (paragraph break added and citations omitted).

After our review, we conclude that the PCRA court's determination is supported by the record and free from legal error. Morris acknowledges the allegation that he fled from the scene in the Buick. *See* Morris' Brief at 37 (stating the two firearms "were found in a vehicle purportedly used in the get-away"). To the extent Morris argues he did not in fact flee from the scene in

- 20 -

such a manner or that someone else was driving the Buick, such claims go to the weight of the evidence to support a conviction. The PCRA court did not abuse its discretion in reasoning that Morris' flight in the Buick, shortly after his attack on the Victim, was a part of "the same act or transaction," and evidence of his flight was admissible to show consciousness of guilt. **See Lopez**, 739 A.2d at 501; **see also Knoble**, 188 A.3d at 1205. Accordingly, Morris has not established his underlying issue had merit, and the PCRA court did not err in denying relief on this claim of Trial Counsel's ineffective assistance. **See Walker**, 110 A.3d at 1003. Thus, we conclude no relief is due on Morris' third issue.

In Morris' fourth issue, he avers the trial court erred, during jury selection, in denying his motions to excuse two jurors for cause. He claims that while the trial transcript shows Trial Counsel used only six peremptory challenges, Morris "recalls" that counsel "used all seven peremptory strikes." Morris' Brief at 43-44. Morris acknowledges that under the PCRA, a claim is not cognizable if it has been waived. Nevertheless, he reasons that "the failure to present [this issue] on direct appeal was the result of governmental interference in the form of a transcript that did not accurately reflect the proceedings." **Id**. at 44.

To be eligible for relief, the PCRA requires that the allegation of error has not been waived. **See** 42 Pa.C.S.A. § 9543(a)(3). "[A]n issue is waived if the petitioner could have raised it but failed to do so before trial, at trial,

during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S.A. § 9544(b).

The PCRA court suggested that "[b]ecause this claim could have [been], but was not, raised on direct appeal, it is waived." PCRA Court Opinion, 7/24/20, at 16. We agree. Furthermore, Morris' reliance on alleged governmental interference is misplaced. The only reference in the PCRA to "interference by government officials" appears in the timeliness exceptions to the one-year filing requirement. *See* 42 Pa.C.S.A. § 9545(b)(1)(i). Here, the PCRA court reinstated Morris' PCRA rights and accepted his present petition as timely filed. Thus, the one-year filing exceptions were not applicable, and in any event, do not revive a waived claim that could have been raised on direct appeal. Morris' fourth issue warrants no relief.

In Morris' fifth issue, he asserts Direct Appeal Counsel was ineffective for not pursuing the "juror issue" on direct appeal. Morris' Brief at 45. The Pennsylvania Supreme Court has explained:

> The test for determining whether a prospective juror should be disqualified is whether he is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence, and this is to be determined on the basis of answers to questions and demeanor . . . . It must be determined whether any biases or prejudices can be put aside on proper instruction of the court . . . . A challenge for cause should be granted when the prospective juror has such a close relationship, familial, financial, or situational, with the parties, counsel, victims, or witnesses that the court will presume a likelihood of prejudice or demonstrates a likelihood of prejudice by his or her conduct or answers to questions . . . . The decision on whether to disqualify is within the discretion of the trial court and will not be reversed in the absence of a palpable abuse of discretion . . . .

- 22 -

*Commonwealth v. Cox*, 983 A.2d 666, 682 (Pa. 2009) (citation omitted). The trial court is "in the best position to assess [the prospective juror's] credibility and fitness to serve." *Id*. at 683.

We first reiterate Morris' claim that although the trial transcript indicates Trial Counsel only used six peremptory strikes, he in fact used seven. Morris reasons that Direct Appeal Counsel "was ineffective because he did not clarify the record before dismissing [the] direct appeal." Morris' Brief at 45. Morris avers that he informed Direct Appeal Counsel after the withdrawal of the appeal:

> that juror number two from the second group [*sic*] gave several answers that were problematic from a defense perspective. His mother was sexually assaulted by his father, who "did time" for the assault, and he had initial difficulty with the concept that the defendant need not testify. At the conclusion of questioning, the transcript simply says that the juror was excused, without any indication of a reason.

*Id*. at 43 (*citing* N.T., 8/23/16, at 91-101). Morris also alleges Trial Counsel "was ineffective for failing to make a record of the reason for the strike." Morris' Brief at 44. Morris then asserts the trial court should have excused the following two jurors for cause: (1) "Juror [N]umber 28[, who] expressed that she could not be fair because of her life experiences," and stated she could be fair " [o]nly after the [trial court] asked her two lengthy . . . and two shorter" questions; and (2) "[J]uror [N]umber 40[, who] never denied that he could be fair, but . . . based on his life experiences, . . . should not have been permitted to sit on the jury." *Id*. at 41-42. Morris concludes that although

both jurors stated they could be fair and impartial, these statements were not credible.

In denying relief, the PCRA court recounted that the trial court found both jurors could be fair, as follows. Although Juror Number 28 stated "that she had three friends who had been raped and that she had been a victim of emotional, but not physical, abuse," upon further questioning by the court, the juror "repeatedly affirmed that she could" set aside her and her friends' experiences and be fair. PCRA Court Opinion, 7/24/20, at 17 (*citing* N.T. 8/22/16, at 57-60). The trial court explicitly found her response was credible. Furthermore, Juror Number 40 stated

> that his brother was incarcerated for domestic violence, that one his brothers had been shot, and a second brother shot and killed, and that he had witnessed a man get stabbed. However, when the [trial c]ourt inquired as to whether any of these occurrences would interfere with his ability to be a fair juror, [the juror responded] that he could still be fair[.]

PCRA Court Opinion, 7/24/20, at 17 (*citing* N.T. 8/22/16, at 74-79). The PCRA court thus concluded there were no grounds for the trial court to excuse these jurors for cause, and Direct Appeal Counsel was not ineffective for not pursuing this issue on appeal.

After review, we conclude that the PCRA court's determination is supported by the record and free from legal error. Once again, Morris fails to address the PCRA court's analysis, and he continues to insist the two jurors' statements, that they could be impartial, were not credible. The trial court, however, found they were credible and this Court cannot reweigh the

credibility finding. *See Cox*, 983 A.2d at 682. Thus, Morris has not established that his underlying issue had merit, and thus cannot show Direct Appeal Counsel was ineffective. *See Lopez*, 739 A.2d at 495 (stating that "counsel cannot be considered ineffective for failing to pursue a meritless claim"); *see also Walker*, 110 A.3d at 1003. Morris' fifth issue thus does not warrant relief.

In his sixth issue, Morris avers the PCRA court erred in denying relief on his claim that Trial Counsel was ineffective for not moving for the production of text messages from his cell phone. "[W]here proposed evidence is cumulative of testimony at trial, counsel cannot be deemed ineffective for failing to present it." *Commonwealth v. Hanible*, 30 A.3d 426, 449 (Pa. 2011) (citation omitted). Additionally, we note Pennsylvania Rule of Criminal Procedure 902(E) provides that generally, "no discovery shall be permitted at any stage of the [PCRA] proceedings, except upon leave of court after a showing of exceptional circumstances." Pa.R.Crim.P. 902(E)(1). "We review a discovery order entered pursuant to this rule under an abuse of discretion standard." *Commonwealth v. Flor*, 136 A.3d 150, 154 (Pa. 2016).

Morris asserts the PCRA court erred in denying relief on his claim that Trial Counsel was ineffective for failing to move for the production of text messages from his cell phone. Morris does not explain between whom these alleged text messages were exchanged, and his entire discussion of this issue is, in sum:

> [Morris and the Victim] purchased the home in which they were living about two months before [Morris'] arrest. While [Morris] and [M]other each testified that [the Victim] offered to "drop the charges" in exchange for the home, [the Victim] denied such a scheme [at trial. N.T. Trial, 8/23/16, at 152-53.] The [trial c]ourt noted that this evidence would be relevant to showing bias. [N.T., 8/24/16 at 122].
>
> [Morris] advised [Trial Counsel] that his cellphone, which was seized by the police at the time of his arrest, contained information that would have verified [the Victim's] efforts to have the home signed over to her in exchange for dropping the charges. Trial [C]ounsel did nothing to obtain access to the phone. This was ineffective and entitles [Morris] to relief.

Morris' Brief at 44.

As stated above, in connection with Morris' first PCRA petition, the PCRA court conducted a brief hearing on his request for discovery of the text messages on his cell phone. At the hearing, the PCRA court found Morris failed to establish the requisite exceptional circumstances for discovery, as: (1) the text messages would have merely corroborated Mother's trial testimony; and (2) the other evidence presented was "overwhelming" and "strong," and "some of it [was] unrefutable." N.T., 1/2/20, at 5. The PCRA court opinion further discussed:

> [Mother] testified that in November of 2015, [the Victim] called her and told her that she would drop the charges if [Morris] agreed to let [the Victim] have the house. [N.T., 8/24/16,] at 174. While something on [Morris'] cellphone may have corroborated this testimony, it would not have undermined the testimony of [the Victim]. As discussed above, all of [the Victim's] important testimony inculpating [Morris] was corroborated by other compelling evidence, including her medical records, her observed condition at the scene of the crime, DNA, ballistics, and the testimony of disinterested witnesses. Anything on the cellphone

merely corroborating [Mother's] testimony would not have undermined confidence in the verdict.

PCRA Court Opinion, 7/24/20, at 18-19.

After review, we conclude that the PCRA court's determination is supported by the record and free from legal error. First, we observe that on appeal, Morris does not acknowledge the PCRA court conducted a hearing on his motion for discovery. Furthermore, Morris does not cite any authority in his argument. **See** Pa.R.A.P. 2119(a). In any event, Morris does not refute the PCRA court's reasoning that: (1) the alleged text messages would have merely provided the same information as Mother's trial testimony; or (2) he was not prejudiced due to the overwhelming trial evidence against him. **See** **Hanible**, 30 A.3d at 449. Accordingly, no relief is due on Morris' sixth issue.

In his seventh issue, Morris avers the PCRA court erred in denying relief on his claim that Trial Counsel was ineffective for not requesting Officer Stankiewicz's police radio transcript. In support, Morris claims the transcript would have shown that the officer's description of the Buick driver did not match the description given by other witnesses. Specifically, Morris maintains that Officer Stankiewicz described the driver as wearing tan pants, a dark-colored long sleeve shirt or jacket, and a black skull cap, whereas the Victim testified he was wearing black pants and a black shirt, and the witness Gross testified she saw a man wearing black sweatpants with white stripes. Morris further asserts that "Officer Stankiewicz could not have positively identified him [because of] poor lighting conditions . . . and . . . the fact that the [driver]

- 27 -

only faced the officer for a split second." Morris' Brief at 46. Morris concludes the radio transcript "would have supported [his] theory of the case that he was not" the driver of the Buick.[9]  *Id*.

The PCRA court agreed with Morris' summary that Officer Stankiewicz's description of the driver's clothing differed from the descriptions provided by the Victim and Gross.  However, the PCRA court found that a transcript of Officer Stankiewicz's radio call "would merely be cumulative of his trial testimony.  Officer Stankiewicz testified to the same description at trial that [Morris] claims that [he] gave on the radio call."  PCRA Court Opinion, 9/22/23, at 12.  The PCRA court further determined the transcript would have had limited probative value:

> Officer Stankiewicz encountered [Morris] approximately an hour after the shooting occurred.  Accordingly, [Morris] had ample time to change his clothes between the shooting and encountering Officer Stankiewicz.  In addition, there was other compelling evidence that [Morris] was the person driving the Buick.  Officer Stankiewicz ran the car's license plate number . . . , which was obscured by the tinted back windshield, and the car came back as registered to [Morris].  Moreover, Officer Stankiewicz identified [Morris] as the car's driver in a photo array the day after the shooting and identified him again at trial.  Therefore, a transcript corroborating Officer Stankiewiez's description of [Morris'] clothing would have been of limited probative value.  As such, [Direct Appeal C]ounsel could not have been ineffective for failing

---

[9] In the heading prefacing this issue, Morris states: "Counsel was ineffective for failing to argue that Trial Counsel was ineffective for failing to request transcript of Officer Stankiewicz's police radio."  Morris' Brief at 45.  To the extent Morris purported to raise a layered ineffectiveness claim challenging Direct Appeal Counsel's representation, he makes no further mention of it, and thus has waived it.  *See* Pa.R.A.P. 2119(a); *see also **Hardy***, 918 A.2d at 771.

to argue [T]rial [C]ounsel was ineffective for not seeking the transcripts.

*Id*. (record citations omitted).

After review, we conclude that the PCRA court's determination is supported by the record and free from legal error. On appeal, Morris wholly fails to address any of the PCRA court's sound reasons for denying relief. Instead, he merely produces verbatim his PCRA claim that Officer Stankiewicz's description of the driver differed from those provided by two witnesses. In the absence of any challenge to the PCRA court's analysis, we determine Morris has not shown he was prejudiced by Trial Counsel's action, nor that the PCRA court abused its discretion in denying relief. *See Walker*, 110 A.3d at 1003. Furthermore, we emphasize that a transcript of Officer Stankiewicz's radio call would have been merely duplicative of the officer's trial testimony. Morris thus cannot show Trial Counsel was ineffective for not requesting evidence that would have been cumulative of other properly admitted evidence. *See Hanible*, 30 A.3d at 449. No relief is due on Morris' seventh issue.

In his eighth issue, Morris avers the PCRA court erred in denying relief on his claim that Trial Counsel was ineffective for not requesting a *Kloiber* instruction, with regard to Officer Stankiewicz's identification of him. Relatedly, in his ninth issue, Morris contends Trial Counsel was ineffective for not objecting to the jury instruction given. The Pennsylvania Supreme Court has explained:

Under ***Kloiber***, "a charge that a witness'[] identification should be viewed with caution is required where the eyewitness: (1) did not have an opportunity to clearly view the defendant; (2) equivocated on the identification of the defendant; or (3) had a problem making an identification in the past."  Where an eyewitness has had "protracted and unobstructed views" of the defendant and consistently identified the defendant "throughout the investigation and at trial," there is no need for a ***Kloiber*** instruction.

***Commonwealth v. Ali***, 10 A.3d 282, 303 (Pa. 2010) (citations omitted).

Additionally, we consider:

[W]hen evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper.  [A] trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

***Commonwealth v. Antidormi***, 84 A.3d 736, 754 (Pa. Super. 2014) (citation omitted).

By way of background, we summarize that at trial, the trial court advised the parties, "I don't see grounds for ***Kloiber*** instructions."  N.T., 8/23/16, at 186.  Trial Counsel did not object.  The trial court then instructed the jury on Officer Stankiewicz's identification of Morris as follows:

In his testimony, Police Officer Stankiewicz identified [Morris] as a person who fled from the car containing firearms.  In evaluating Officer Stankiewicz's testimony, in addition to the other instructions I've provided you for judging the testimony of witnesses, you should consider the following additional factors on the issue of identification[.]

A, did the witness have a good opportunity to observe the perpetrator of the events?  B, was there sufficient lighting for him

- 30 -

to make his observations?  C, was he close enough to the individual to note his facial and other physical characteristics as well as clothing he was wearing?  D, has he made a prior identification of [Morris] as the perpetrator of the crimes in any other proceeding?  E, was his identification positive or was it qualified by any hedging or interactions?  F, during the course of this case, did this witness identify anybody else as being the perpetrator?

In considering whether or not to consider the testimony of Officer Stankiewicz, you should consider all circumstances under which his identifications were made.

N.T., 8/25/16, at 76-77.

On appeal, Morris asserts the PCRA court erred in denying relief on his claim that Trial Counsel was ineffective for not objecting to the trial court's decision to not give a *Kloiber* charge.  Morris insists "the first and third *Kloiber* scenarios [were] present," as: (1) "Officer Stankiewicz did not have an opportunity to properly identify [him] as the man inside the Buick given the poor lighting conditions" and the fact "he only saw the individual for a split second;" and (2) when the officer identified him in a photo array, the officer wrote only that the person "looks like" Morris, not that he "was definitely" Morris.  Morris' Brief at 47-48 (*citing* N.T., 8/24/16, at 30, 33-34).

Relatedly, in his ninth issue, Morris avers the PCRA court erred in denying relief on his claim that Trial Counsel was ineffective for not objecting to the jury instruction given.  Morris' Brief at 49.  Morris contends that whereas the trial court gave the then-in effect Pennsylvania Standard Criminal Jury Instruction (Criminal) ("Pa. SSJI") § 4.07A, "Identification Testimony- Accuracy Not in Doubt," the court should have instead given the 4.07B jury

instruction, "Identification Testimony-Accuracy in Doubt."[10] *Id*. at 50.  The

latter charge included instructions that: (1) there was "a question of whether

this identification is accurate;" and (2) "there was evidence that [the witness]

could not see the criminal clearly."  *Id*.  Morris also reiterates that Officer

Stankiewicz did not have a clear opportunity to view the driver of the Buick

and "had difficulty identifying" him in the photo array.  *Id*. at 51.

In denying relief on Morris' *Kloiber* instruction claim, the PCRA court

reasoned:

> [N]one of the factors that would warrant a *Kloiber* charge were
> present.  Officer Stankiewicz had a clear opportunity to view
> [Morris] after [Morris] exited his car as Officer Stankiewicz saw
> [Morris'] face, which was uncovered, for over three seconds on a
> street with working streetlights.  [N.T., 8/24/16,] at 16-17, 30.
> Additionally, Officer Stankiewicz never equivocated on his
> identification of the driver as [Morris].  The day after the shooting,
> Officer Stankiewicz identified [Morris] in a photo array as the
> driver he saw exiting the car the previous morning.  *Id*. at 32.
> Additionally, at trial, Officer Stankiewicz again identified [Morris]
> as the driver.  [*Id*.] at 15-16.

PCRA Court Opinion, 9/22/23, at 13 (some citations omitted).

After review, we conclude that the PCRA court's determination is

supported by the record and free from legal error.  The record supports the

PCRA court's finding that between the vehicle stop and trial, Officer

---

[10] At the time of Morris' 2016 trial, the second edition of the Pa. SSJI was in effect.  Section 4.07A concerned identification testimony whose accuracy was *not* in doubt, and section 4.07B related to identification testimony whose accuracy *was* in doubt.  Under the third edition of the Pa. SSJI, which came into effect in 2019, section 4.07A incorporated provisions of former section 4.07B.  *See* Pa. SSJI (Crim.) § 4.07A (3d ed. 2019), *subcommittee note*.

Stankiewicz did not equivocate on his identification of Morris as the driver of the Buick — Morris' challenge to the weight of this identification notwithstanding. As the officer "consistently identified [Morris] 'throughout the investigation and at trial,' there [was] no need for a **Kloiber** instruction." **See Ali**, 10 A.3d at 303. Thus, Morris has not shown that his underlying **Kloiber** issue had arguable merit, and we conclude the PCRA court did not abuse its discretion in denying relief on this ineffectiveness claim. **See Walker**, 110 A.3d at 1003.

For the same reasons, we determine no relief is due on Morris' claim that Trial Counsel was ineffective for not objecting to the jury instruction given. Morris' insistence that Officer Stankiewicz "only looked at him for a split second" and that "it was dark outside" is not supported by the officer's testimony that there were streetlights and he saw Morris' face for more than three seconds. **See** N.T., 8/24/16, at 16, 30; **see also** Morris' Brief at 51. The instruction accurately conveyed the law and did not amount to an abuse of discretion by the trial court. **See Antidormi**, 84 A.3d at 754. For the foregoing reasons, no relief is due on Morris' eighth and ninth issues.

In his tenth issue, Morris avers the PCRA court erred in denying relief on his claim that Trial Counsel was ineffective for failing to "investigate and interview" Uncle, whom Morris claimed was, in fact, driving the Buick. Morris' Brief at 48. Our Supreme Court has stated: "Counsel has a general duty to undertake reasonable investigations[.] The duty to investigate . . . may

- 33 -

include a duty to interview certain potential witnesses; and a prejudicial failure to fulfill this duty, unless pursuant to a reasonable strategic decision, may lead to a finding of ineffective assistance." ***Commonwealth v. Johnson***, 966 A.2d 523, 535-36 (Pa. 2009) (citations omitted). When claiming that counsel failed to call a witness at trial, the petitioner must prove:

> (i) the witness existed; (ii) the witness was available to testify; (iii) counsel knew of, or should have known of, the existence of the witness; (iv) the witness was willing to testify; and (v) the absence of the testimony was so prejudicial as to have denied the defendant a fair trial.

***Commonwealth v. Pander***, 100 A.3d 626, 639 (Pa. Super. 2014) (*en banc*).

Morris maintains he told Trial Counsel that it was Uncle who was driving the Buick. Morris contends that at trial, Trial Counsel stated on the record that he "may call" Uncle as a witness, but also explained, "I haven't spoken to the uncle. I'm having the uncle come down and see what he says." Morris' Brief at 48 (*quoting* N.T., 8/24/16, at 48). However, Morris claims, Trial Counsel failed to interview Uncle.

In denying relief, the PCRA court reasoned that Morris failed to attach a witness certification from Uncle stating the substance of his proposed testimony, nor a certification signed by Morris or his counsel explaining their efforts to obtain Uncle' signature. ***See*** PCRA Court Opinion, 9/22/23, at 10 (*citing* 42 Pa.C.S.A. § 9545(d)(1)(i)).

After review, we conclude that the PCRA court's determination is supported by the record and free from legal error. Although the PCRA court

referred to section 9545(d)(1) — which applies when a petitioner wishes to present a witness at a PCRA evidentiary hearing[11] — we conclude the court's rationale is consistent with **Pander**, 100 A.3d at 639. Morris does not claim Uncle was willing to testify on his behalf at trial, or even that Uncle has admitted he was driving the vehicle carrying two loaded firearms. Instead, Morris baldly insists, both in his PCRA petition and on appeal, that Uncle was the driver. In the absence of any indication that Uncle would have agreed to testify in this regard at trial, we conclude no relief is warranted on Morris' tenth issue.

In his eleventh issue, Morris avers the PCRA court erred in denying an evidentiary hearing on his claims. This Court has explained:

> [T]he PCRA court has the discretion to dismiss a petition without a hearing when the court is satisfied "that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by any further proceedings." Pa.R.Crim.P. 909(B)(2). "[T]o obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing."

**Hanible**, 30 A.3d at 452 (some citations omitted).

---

[11] **See** 42 Pa.C.S.A. § 9545(d)(1)(i) (providing that "[w]here a petitioner requests an evidentiary hearing, the petition shall include a certification signed by each intended witness stating the witness's name, address, date of birth and substance of testimony and shall include any documents material to that witness's testimony").

Morris maintains that he raised genuine issues of material fact necessitating an evidentiary hearing. Morris also avers that although the PCRA court "claimed that it had carefully reviewed the record," the court "provided no further explanation for denial of an evidentiary hearing for issues raised over Trial Counsel's ineffectiveness." Morris' Brief at 52.

The PCRA court found there were no genuine issues of material fact that necessitated a PCRA hearing. *See* PCRA Court Opinion, 9/22/23, at 16. After review, we conclude that the PCRA court's determination is supported by the record and free from legal error. We incorporate our above analyses of each of Morris' issues, and conclude Morris has not raised any issues of material fact. Accordingly, the PCRA court did not abuse its discretion in dismissing Morris' PCRA petition without a hearing.

For the foregoing reasons, no relief is due on any of Morris' claims.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/16/2024